**IN THE UNITED STATES DISTRICT COURT**
**EASTERN SECTION OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| BILLIARDS AND BREWS, LLC and | ) | |
| RICHARD LAWHORN, | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: _____ |
| | ) | JURY TRIAL DEMANDED |
| TENNESSEE ALCOHOL BEVERAGE | ) | |
| COMMISSION, | ) | |
| CITY OF KNOXVILLE, TENNESSEE, | ) | |
| And SRGT. JOHN COWARD, | ) | |
| | ) | |
|      Defendants, | ) | |
| | ) | |
| as well as other defendants | ) | |
| not yet known. | ) | |

## COMPLAINT

Comes the Plaintiffs, through under-signed counsel, and for their Complaint for damages both jointly and severally against the named Defendants herein and all defendants/conspirators not yet known and would state to this Honorable Court the following:

## PARTIES

1.    Plaintiff, Billiards and Brews, LLC (hereinafter "B&B"), is a limited liability company duly authorized as such under the laws of Tennessee.

2.    Plaintiff. Richard Lawhorn, (hereinafter "Lawhorn"), is a resident and citizen of Knoxville, Knox County, Tennessee and is the sole-owner of B&B.

3.    Defendant, Tennessee Alcohol Beverage Commission, (hereinafter "TABC"), is a division of the Tennessee government and regulates the licensing and sale of liquor in Tennessee.

Case 3:23-cv-00181-CLC-DCP   Document 1   Filed 05/23/23   Page 1 of 21   PageID #: 1

4.     Defendant, The City of Knoxville is a municipality and can served through its Chief

Executive Officer, Mayor Indya Kincannon.

5.     Defendant, Sgt. John Coward, (hereinafter "Srgt. Coward"), is an officer with the

Knoxville Police Department's inspections unit.

6.     Other defendants not yet known to the Plaintiffs for which discovery will be necessary.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction and venue over the Plaintiff's claims brought pursuant to Title

42 of the United States Code section 1983-1988. *See* 28 U.S.C. § 1331, 1343(a)(3).

8.     This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to

Title 28 of the United States Code section 1367.

9.     Venue exists in this Court pursuant to Title 28 of the United States Code section 1391.

## FACTS GIVING RISE TO CAUSES OF ACTION

10.     B&B is located in the city limits of Knoxville, Tennessee. B&B's primary place of

business at all relevant times herein was located at 8705 Unicorn Drive, Suite 110, Knoxville,

TN 37923. B&B was exclusively owned by Lawhorn.

11.     B&B held a limited-service restaurant Liquor-by-the-Drink license allowing it to sell

liquor, wine, and high-gravity beer at a restaurant or bar in a city or county which has authorized

the sale of alcoholic beverages for on-premise consumption issued by the TABC.

12.     B&B also held a beer permit allowing it to sell beer in City of Knoxville.

13.     B&B operated its establishment for many years well past 12 A.M.  At the time those

hours were fully compliant with the various Knoxville City's' ordinances.

14. B&B has a fundamental property right in the continuation of its business. Both Tennessee law recognizes and protects B&B's substantive property rights in their existing businesses and their particular business formats, including hours of operation.

15. The Fourteenth Amendment prohibits any state from depriving any person of life, liberty, or property without due process of law, and then following that, in a third entirely separate and independent provision it prohibits any state from denying to "any person within its jurisdiction the equal protection of the laws."

16. The Supreme Court has long recognized that an individual may have a significant interest in maintaining a license. *See, e.g., Burson*, 402 U.S. at 539 ("Once licenses are issued . . . their continued possession may become essential in the pursuit of a "livelihood"). More generally, the Court has "repeatedly recognized the severity of depriving someone of his or her livelihood." *FDIC v. Mallen*, 486 U.S. 230, 243 (1988).

17. A majority of B&B's revenues in order to pay its bills and its owner, Lawhorn, are obtained from the sale of beer and liquor. In addition, B&B's employees depend on the sale of beer and liquor for their wages in order to support their families.

18. On May 22, 2020, Tennessee's Governor Bill Lee (hereinafter "Governor Lee") issued Executive Order No. 38. On Page 9, labeled subparagraph c the order states:

> "Local orders in six counties with a locally run county health department (Davidson, Hamilton, Knox, Madison, Shelby, and Sullivan). The six locally run county health departments run county health department in Davidson, Hamilton, Knox, Madison, Shelby, and Sullivan counties shall have authority to issue additional orders or measures related to the containment or management of the spread of COVID-19, which may permit to a greater degree, or restrict to a greater degree, the opening, closure, or operation of businesses, organizations, or venues in those counties or the gathering of person' provided that no local official or local government entity shall issue an order or measure regarding places of worship or an order or measure that contravenes Paragraphs 6, 9, or 10."

19.     Tenn. Code Ann. § 68-2-601 (f)(3) authorizes adoption of regulations to "protect the general health and safety of the citizens of the county" that "shall be at least as stringent as the standard established by a state law or regulation as applicable to the **same or similar subject matter**."

20.     The City of Knoxville, *sua sponte*, adopted its own unlawful "COVID CURFEW."

21.     The Knox County Health Board ("KCHB) was established under Knox County Charter.[1]

22.     While counties have large amounts of home rule power, and can even enact more restrictions than state law provides, they cannot do so in a manner that would be inconsistent with state law.

23.     On July 29th, 2020, KCHB unlawfully adopted Regulation No. 2020-3, "COVID-19 Suppression in Bars Regulation." The regulation unlawfully closed all "bars" in Knox County suspending offering food and drink, including both alcoholic and non-alcoholic beverages, for on-premises consumption.  KCHB Regulation No. 2020-3.

24.     On August 5th, 2020, KCHB adopted Regulation No. 2020-4, in which KCHB found the complete closure of "bars" had a detrimental impact on the owners and employees and instead implemented that "bars" could remain open until 10:00 P.M.  KCHB Regulation No. 2020-4.

25.     The rationale by enacting such laws is fatally flawed and fails to meet even rational basis review because people are just as likely to get infected with Covid-19 drinking in bars at 5 P.M. as compared to 10:01 P.M. or later in the evening.

26.     The "COVID CONSUMPTION CURFEW" violated the Equal Protection Clause of both the Tennessee Constitution and the United States Constitution because it restricts the operations

---

[1] The former Knox County Board of Health, which was established under the Knox County Charter has been disbanded and reconstituted into only an advisory board.

of certain businesses after the hours of 10 P.M. but allows other similar businesses to remain open.

27.     There is not, nor has there ever been, any valid/applicable scientific proof or a medical basis to enact an unconstitutional targeted curfew.   COVID-19 is not a smart virus that knows how to tell time and there is no evidence suggesting COVID-19 was spread to a greater or lesser degree at different times of the day or to correlate the hours of the curfew to scientific or medical evidence demonstrating variable risk throughout the day.  There is also no factual or logical basis to believe that COVID-19 is more likely to spread at a restaurant or bar as opposed to other businesses where people gather in large numbers in close proximity such as gyms.

28.     Dr. Patrick O'Brian of KCBH was quoted on September, 14, 2020 in The Knoxville Focus saying that Knox County Sheriff Tom Spangler has stated his department will not enforce health department regulations.  The Knoxville Focus article also stated that the Knoxville Police Department at the time the article was written.

29.     KCBH continued unlawfully adopting regulations and on September 16, 2020 adopted 2020-5.  In sum, the intent of the KCBH was to suspend the on-premises consumption of food and drink in "establishments" within Knox County from after 11:00 P.M.  KCBH Regulation No. 2020-5.

30.     The resolutions went well beyond the authorities set forth by Governor Lee's, May 22, 2020, Executive Order and were irrational and arbitrary on their face and lacked any legislative predicate for significant limitations placed on restaurants and bars and violated B&B's due process in violation of both the Tennessee and United States Constitutions.

31.     On September 16, 2020, WBIR Channel 10 reported that the Knox County Sheriff's Office and KPD had not issued citations for masks or bar curfew violations in the months the regulations had been effect.

32.     In the same article, Police Chief of KPD, Eve Thomas (hereinafter "Chief Thomas") was quoted as saying, "We will do our job as compassionately as we can, but it's our job to enforce laws as passed by bodies like [the Knox County Board of Health]. I have concerns on both sides, but we will enforce whatever you decide." KCBH does not possess the legislative power to pass laws.

33.     On September 29, 2020, David Buuk, Knox County Law Director, shockingly told the KCBH, that they may have the actual authority to even "take our guns" away.

34.     On September 30, 2020, WBIR posted an article titled "Crowded bar near UT campus raises concerns about public health issue." Mayor Kincannon provided the following statement to WBIR:

> "These pictures provide stark evidence that many people are not taking this pandemic seriously and it's incredibly frustrating. We can and must do better. If we want to keep UT open, if we want our children to be able to learn in person, we need to do more to protect the public health during this unprecedented pandemic. It is time to go back to the drawing board and for all leaders to ask themselves, if they are doing enough to protect the health during this unprecedented pandemic. It is time to go back to the drawing board and for all leaders to ask themselves if they are doing enough to protect the health and well-being of our community."

35.     On November 17, 2020, Mayor Kincannon, in her individual capacity and without authority amended Ordinance No: O-168-2020 as an "Emergency Measure." Chapter 4, Article II, Division 2, Section 4-73 (c) of the Code of City Ordinances . . . is hereby amended to add the following as the third sentence in this subsection:

> "Executive Orders issued by the Governor, Executive Orders issued by the Mayor,

Resolutions and Regulations issued by the Knox County Board of Health, or Orders issued by the Knox County Health Director or the Knox County Health Officer has the force of law, and, for purposes of this subsection, these orders, resolutions, and regulations are considered to be "laws" that must be complied with by beer permittees.  Failure to comply with the requirements set forth in any such law may cause for a beer permit to be revoked or suspended."

See Ordinance No:  O-168-2020.

36.     On November 11, 17, 2020 Mayor Kincannon in her independent capacity and also again without authority amended Ordinance No:  O-169-2020 as an "Emergency Measure."  Chapter 4, Article II, Section 4-32(b) of the Code of City Ordinances is hereby amended to add the following two sentences:

"The time constraints set forth in this subsection shall be further limited if the hours allowed for on-premises sale or consumption of alcoholic beverages are limited by lawful order, regulation or resolution of a regulatory authority having jurisdiction to do so.  Such regulatory authorities include, but are not limited to, the Governor of the State of Tennessee, the Knox County Board of Health, and the Knox County Health Director."

See Ordinance No:  O-169-2020.

37.     On November 25. 2020, KCBH unlawfully adopted Regulation 2020-7, **COVID-19 RESTRAUNT OCCUPANY LIMITATION AND EARLY CLOSURE REGULATION"** which was abrogated by the regulation upon its adoption.

"All restaurants, bars, and similar food or drink establishments, including nightclubs, shall close for on-premises consumption and activities at 10:00 p.m. EST and not permit the on-premises consumption and activities to resume until 5:00 a.m. the following day that they are opened for business. They may remain open after 10:00 p.m. only to offer drive-thru, pickup, carryout, or delivery service for food or drink, and persons are highly encouraged to use such drive-thru, pickup, carryout, or delivery options to support such businesses during this emergency."

See Regulation 2020-7.

38.     The Tennessee Constitution, Section 9, states that a charter or amendment may be proposed by ordinance of any home rule municipality, by a charter commission provided for by

act of the General Assembly and elected by the qualified voters of a home rule municipality voting thereon or, in the absence of such act of the General Assembly, by a charter commission of seven (7) members, chosen at large not more often than once in two (2) years, in a municipal election pursuant to petition for such election signed by qualified voters of a home rule municipality not less in number than ten (10%) percent of those voting in the then most recent general municipal election.

39.    Notice of this new unlawful "ordinance" was distributed as a flyer to bars, restaurants and night clubs by KPD, which also indicated that any violator could be prosecuted pursuant to T.C.A. § 68-2-602. It is important to note that Governor Lee's Tennessee Pledge Guidelines did not authorize The City of Knoxville or KPD to treat the KCBH regulation as *law*.

40.    The flyer stated that all restaurants and bars shall close to on-premises customers no later than 11:00 P.M so long as the requirements set forth in Knox County Health Regulation 2020-5 are in effect.  The wording of the flyers changed the "COVID CONSUMPTION LAW" to just a "COVID CURFEW."

41.    On November 24, 2020, KPD distributed a second flyer moving the "COVID CURFEW" from 11:00 P.M. to 10:00 P.M.

42.    Mayor Kincannon's "emergency amended ordinances" are preempted by state law, represents an *ultra vires* act not authorized by law and are facially unconstitutional on their face. As such, the ordinance is void *ad initio* and should have never been enforced against B&B or other bars in Knoxville.

43.    B&B, their employees and their patrons have suffered an infringement of their freedom of association as well as their privacy and liberty interests.  Ordinance 42-3 (b), on its face is limited to restaurants and establishments selling alcohol.

44.     The Knoxville City "COVID CURFEW" limited not just B&B's economic activity, but also their abilities to disseminate constitutionally protected free speech and entertainment. The curfew also limited times to play pool and dart tournaments.

45.     Bars, restaurants, etc. were open in Knox County, Tennessee and had no threat of receiving a citation due to being open or serving alcohol.

46.     Businesses, including gyms, churches, government operations and other institutions were not subject to the 10:00 P.M. or 11:00 P.M. curfew and were not forced to close.

47.     At all relevant time, Lawhorn has been a vociferous opponent of Mayor Kincannon in the Knoxville media/press about the unlawful amended 4-32 (b) being unconstitutional and in fighting for his constitutional rights and that of others he refused to close his business at 10 P.M.

48.     In fact, during an interview with WBIR Channel 10 News, Lawhorn announced that he was thinking of running against Mayor Kincannon in the next election because he felt she was doing a bad job.

49.     Upon information and belief, and as a result of Lawhorn exercising his first amendment rights, Mayor Kincannon retaliated and entered into a conspiracy with the other Defendants herein, as well as defendants/conspirators not yet known to shut down B&B. In fact,

50.     Upon information and belief, Mayor Kincannon told Srgt. Coward that if Lawhorn did not comply with the unlawful curfew she would shut down B&B.

51.     The City of Knoxville's Beer inspector, Sgt. John Coward, nor any other KPD officer can issue citations for businesses within its jurisdiction for Covid curfew violations, which clearly do not involve retail sales and consumption of alcoholic beverages.

52.     Despite not having jurisdiction, B&B was cited 18 times by KPD for violations of the Knoxville's "Covid Curfew."

53. Each and every citation written against B&B by Sgt. Coward stated the reason for the violation was being in violation of Knoxville City Ordinance 4-32(b) by being "open for business past the curfew.

54. Sgt. Coward issued most of the unlawful citations for the alleged violations of Knoxville City Ordinance 4-32(b) and communicated the same with TABC Assistant Special Agent in Charge, Agent Grooms who then executed a summary suspension of B&B's liquor license.

55. Upon information and belief, Mayor Kincannon and Attorney Alyson Dyer conspired with Sgt. Coward, as well as other defendants/conspirators not yet known, to cite B&B for violations of the amendment 4-32(b) in order to take B&B's beer permit and liquor license, thereby constituting an unconstitutional taking of B&B's personal property.

56. In the interim, and prior to B&B having a chance to be heard and defend itself against these unconstitutional citations, Sgt. Coward was conspiring by email transmission, and perhaps by other means of communication, with Agent Grooms of the TABC to have B&B's liquor license revoked – without a hearing on same. These illegal acts by Sgt. Coward, as an authorized agent of the Knoxville Beer Board, and Agent Grooms, as an authorized agent of the TABC constitutes a violation of the Tennessee Sunshine Law and Tennessee Open Meetings Act[2] and was in furtherance of the grand ongoing conspiracy against the Plaintiffs by the Defendants herein, as well as other defendants/conspirators not yet known.

57. On January 22, 2021, the TABC revoked B&B liquor license without a hearing and without Agent Grooms independently investigating the allegations against B&B.

---

[2] The Tennessee Sunshine Law declares that the formation of public policy and public business must be transacted in public and not in secret. The Tennessee Open Meetings Act requires all meetings of a governing body to be open to the public and that a governing body provide adequate public notice of the meeting.

58.     On January 28, 2021, Agent Grooms and Sgt. Coward unlawfully entered B&B's premises and noted that there was no alcohol being sold or consumed yet gave a citation to B&B for being open past the "COVID CURFEW."

59.     Attorney Alyson Dyer handled the prosecution of the revocation of B&B's beer permit.

60.     The Knoxville City Beer Board requested a 75 day suspension of B&B's beer permit.

61.     Attorney Gulley held a hearing on February 9, 2021. The hearing was held based on the "Non-Compliance Complaint" brought by The City of Knoxville in violation of B&B's due process rights because the underlying "citations" had not been adjudicated.

62.     On February 10, 2021, the administrative law judge issued a Memorandum Opinion and Order.

63.     The Judge wrote, "your Hearing Officer believes that it is appropriate to draw a negative inference from his [Lawhorn] invocation of his privilege against self-incrimination."

64.     The Judge continued, "The City of Knoxville requests that the Permittee's beer permit be suspended for at least seventy-five (75) days …."

65.     However, in violation of B&B's constitutional rights, the Judge revoked B&B's beer permit.

66.     Upon information and belief, the Defendants and other unknown coconspirators conspired with to ensure the revocation of B&B's beer permit.

67.     Gully's order, violating B&B and Lawhorn's constitutional rights to due process revoked B&B beer permit, "effective immediately" and ordered B&B to pay the costs incurred.

68.     On May 7, 2021, B&B had a hearing in front of the City Court, Judge Rosson affirmed the curfew citations.

69.     On May 13, 2021, a hearing was held regarding B&B's beer license, etc. in the Chancery Court for Knox County, Tennessee in front of the Honorable Clarence Pridemore (herein after, "Judge Pridemore").

70.     At this stage in the litigation, Michael Kelley (herein "Attorney Kelley") of Kennerly, Montgomery & Finley, P.C. (herein "Finley Law Firm") represented the City of Knoxville Beer Board.

71.     During the May 13, 2021 hearing, Attorney Kelley had numerous conversations with Judge Pridemore during the hearing regarding a separate lawsuit filed by Attorney Russell Egli (herein after "Attorney Egli") on behalf of B&B.  Attorney Egli nor Brent Stokes, Esq. were present during the hearing yet Attorney Kelly made comments regarding the lawsuit not before the court, such as, it should go the "credibility of the party."

72.     Attorney Dyer testified for the City of Knoxville during the May 13th B&B Chancery Court hearing.

73.     Several months later, Sgt. Cowan testified at the TABC August 13th, 2021 hearing to revoke B&B's liquor license as a result of the Knoxville City Law Department's unlawful Covid shutdown flyers.

74.     B&B hired Attorney Rick Owens (herein "Attorney Owens") to represent him in front of the Knoxville City Beer Board and the TABC.

75.     The City of Knoxville Beer Board revoked B&B's beer permit.

76.     On May 13, 2021, a hearing in, Billiards & Brews, LLC vs City of Knoxville Beer Board, was held. At the hearing, Sgt. Coward testified at the Revocation Hearing that the law department interpretated the reading of the unlawful ordinance 4-32 (b).

77. On August 13, 2021, Sgt. Coward testified that before the ordinance was "codified," KPD had no authority to enforce any board of health orders or resolutions."

78. Upon information and belief, said conspiracy to violate B&B's and Lawhorn's constitutional rights is ongoing and continuing to date.

79. Upon information and belief, and in furtherance of the conspiracy Mayor Kincannon and Attorney Dyer to have co-conspirator, Sgt. Coward to do almost daily "curfew checks" at B&B in violation of Plaintiffs constitutional rights.

80. Attorney Owens questioned Sgt. Coward during the August – hearing and proved that Sgt. Coward had perjured himself. Owens asked Sgt. Coward if it was his testimony as of the August 13, 2021 hearing that when he wrote January ---- citation he did not see the sale or consumption of alcohol but he wrote the citation anyways. (See **Exhibit K**, page 103, number 21-24.

81. Enforcement of the state's liquor laws is the main responsibility of the law enforcement section. Special Agents conduct a wide variety of enforcement activities in the enforcement of the state's liquor laws and Tennessee Alcoholic Beverage Commission Rules and Regulations to include pre-license investigations and inspections, audits of financial records, and investigations of criminal activities occurring on any state licensed premise.

82. The TABC's agents focus a great deal of their efforts on preventing underage sales of alcoholic beverages to minors. Minor compliance checks of licensed establishments are conducted on regular basis to prevent underage sales of alcoholic beverages. Minor compliance checks are an integral part of protecting our youth against underage drinking by ensuring that licensed establishments comply with the state laws against sales of alcohol to minors.

83.    Sgt. Coward emailed Agent Grooms "Attorney showed is cards in his first hand.  We'll be ready for him."

84.    On February 9th, 2021, Sgt. Coward emailed Agent Grooms "Hopefully this will help us revoke his beer permit."

85.    Upon information and belief, Attorney Dyer also conspired with Sgt. Coward and Mayor Kincannon.  Dyer advised Sgt. Coward that as a beer enforcement officer he had the authority to enforce the KCBH resolutions or regulations. Dyer, as an attorney, knew or should have known this was not true under simple constitutional principles. Sgt. Coward as a beer enforcement officer only had authority to write citations for the sale or consumption of alcoholic beverages in a permitted establishment and not for unlawful ordinances invented by Mayor Kincannon.

86.    Sgt. Coward was cross examined by Attorney Owens at the Revocation Hearing. Attorney Owens asked Sgt. Coward if he could write a citation for a bar being opened passed 3:00 A.M. and they were shooting pool and playing darts but there was not any sale or consumption of alcoholic beverages and Sgt. Coward admitted that he could not.

87.    Since licensing consists in the determination of factual issues and the application of legal criteria to them — a judicial act — the fundamental requirements of due process are applicable to it. Due process in administrative proceedings of a judicial nature has been said generally to be conformity to fair practices of Anglo-Saxon jurisprudence, see Tadano v. Manney, 160 F.2d 665, 667 (9th Cir. 1947), which is usually equated with adequate notice and a fair hearing, see Opp Cotton Mills v. Administrator, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624 (1941). Although strict adherence to the common law rules of evidence at the hearing is not required, see Crowell v. Benson, 285 U.S. 22, 48, 52 S.Ct. 285, 76 L.Ed. 598 (1932), the parties must generally be allowed an opportunity to know the claims of the opposing party, Morgan v. United States, 304

Case 3:23-cv-00181-CLC-DCP    Document 1    Filed 05/23/23    Page 14 of 21    PageID #: 14

U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), to present evidence to support their contentions, see id. 304 U.S. at 18, 58 S.Ct. at 776, 82 L.Ed. 1129, and to cross-examine witnesses for the other side, Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949). Thus, it is not proper to admit *ex parte* evidence, given by witnesses not under oath and not subject to cross-examination by the opposing party. Southern Stevedoring Co. v. Voris, 190 F.2d 275 (5th Cir. 1951); see Chin Quong Mew ex rel. Chin Bark Keung v. Tillinghast, 30 F.2d 684 (1st Cir. 1929). *A fortiori,* the deciding authority may not base its decision on evidence which has not been specifically brought before it, United States v. Abilene So. Ry., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016 (1924); the findings must conform to the evidence adduced at the hearing, Tadano v. Manney, 160 F.2d 665 (9th Cir. 1947). Furthermore, the Supreme Court has said that an administrative order "cannot be upheld merely because findings might have been made and considerations disclosed which would justify its order * * *. There must be such a responsible finding." SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). Thus, where the Secretary of State indicated that passport regulations precluded the issuance of a passport to the applicant in question, but did not specify the applicable sub-section or set out the findings on which the conclusion was based, it was held that factual findings would be required before the Secretary could deny the application. Boudin v. Dulles, 98 U.S.App. D.C. 305, 235 F.2d 532 (1956).

88.    In addition, TABC stated in a complaint that a fatal shooting at the bar on December 27th. 2020 may not have happened had the bar abided by the curfew.  "Had Respondent been properly closed by ten o'clock (10:00) p.m., the homicide may have been prevented," … this, despite the fact, that Knox County Sheriff refused to enforce the unlawful curfew edict.

Case 3:23-cv-00181-CLC-DCP     Document 1     Filed 05/23/23     Page 15 of 21     PageID #: 15

89.     As a direct result of the unlawful and unconstitutional acts set forth herein the Plaintiffs have lost millions of dollars in profits from its beer and liquor permit being revoked.

90.     Other Knoxville bars, restaurants and night clubs were also subjected to the unconstitutional curfew law, however, upon information and belief none of them were punished as severely as B&B.

91.     As a result of the illegal and unconstitutional acts set forth herein, Lawhorn suffered severe mental and emotional anguish, to include, but not be limited to, migraine headaches, depression, sleepless nights, nausea, fear of losing his livelihood and going bankrupt, etc.

92.     The unlawful conspiratorial acts set forth herein are continuing and as a result continue to damage the Plaintiffs. In July of 2022, a small paramilitary unit swarmed down on B&B purporting to have a search warrant.

93.     Upon requesting a complete copy of the search warrant from the TABC, the under-signed counsel was handed an incomplete copy leaving no way for Plaintiffs to ascertain if the TABC was searching the premise legally.

94.     Upon information and belief, the TABC did not have a valid search warrant because it was either faulty on its face or the TABC system showed that Plaintiffs maintained a valid liquor license.

95.     During the search, the TABC hauled off a small moving load of liquor belonging to the Plaintiffs. The liquor taken by the TABC is worth several thousand dollars.

100.    Upon information and belief, the conspirators and unindicted conspirators named herein, joined together to unlawful take down the Plaintiff once and for all with the July 2022 raid, in part to silence him.

Case 3:23-cv-00181-CLC-DCP      Document 1      Filed 05/23/23      Page 16 of 21      PageID #: 16

101.    As a direct result of the unlawful acts of the conspirators named herein, and as yet

unknown, Plaintiffs have suffered thousands of dollars in loss of personal property.

## COUNT I-VIOLATION OF PLAINTIFFS CIVIL RIGHTS – FIRST AMENDANT RIGHTS AGAINST ALL DEFENDANTS
## 42 U.S.C. § 1983

102.    Plaintiffs restate Paragraphs 1-101 in support of Count I.

103.    At all times material hereto, Defendants were acting under color of state law in their

individual and/or official capacities.

104.    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of

any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen

of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes

of this section, any Act of Congress applicable exclusively to the District of Columbia shall be

considered to be a statute of the District of Columbia. 42 U.S.C. § 1983 et seq.

105.    The curfew imposed by ordinance 42-3 (b) is unconstitutional on it's face and as applied

to the Plaintiffs because it violates the Plaintiffs' First Amendment Rights.

106.    The curfew imposed by ordinance 42-3 (b) did not allow for pool tournaments to occur.

107.    The curfew imposed by ordinance 42-3 (b) is not a law of general application because it

applied only to restaurants and establishments selling alcohol, and no other businesses or

institutions.

108.    The curfew provisions are not narrowly tailored or do not adopt the least restrictive

means of regulation.  The Executive Order was purportedly adopted to counter the threat posed

by COVID-19.  The Defendant interest in protecting against the virus is fully met by the social

distancing and sanitary regulations imposed on restaurants and other businesses and restrictions on hours of operation do not further that interest.

109.    Moreover, the Fifth Amendment creates a number of rights relevant to both criminal and civil legal proceedings. In criminal cases, the Fifth Amendment guarantees the right to a grand jury, forbids "double jeopardy," and protects against self-incrimination. It also requires that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property" and requires the government to compensate citizens when it takes private property for public use.

110.    Due Process - the Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law." The Fourteenth Amendment, ratified in 1868, uses the same eleven words, called the Due Process Clause, to describe a legal obligation of all states. These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures.

111.    The Defendants unconstitutional and illegal acts as set forth hereinabove violates Plaintiffs' rights guaranteed by 42 U.S.C. §1983, including, but not limited to the following, citing the Plaintiffs under an unconstitutional law that fails the rational basis test, acting in concert with one another to deprive the Plaintiffs of their property rights and acting in secrecy in order to further the grand conspiracy against the Plaintiffs in furtherance of same – which is ongoing to date.

112.    These unconstitutional and illegal acts have caused Lawhorn severe mental and emotional anguish as noted above for which he has been seeing a licensed therapist.  Lawhorn has also lost hundreds of thousands of dollars.

### <u>COUNT II -VIOLATION OF THE EQUAL PROTECTION CLAUSE</u>

113.    The Plaintiffs reallege and incorporate all paragraphs set forth herein.

114.    On its face, the curfew imposed by ordinance 42-3 (b) is limited to restaurants and establishments selling alcohol.

115.    No other businesses are affected by the curfew including those which are similar in terms of density, occupancy and rise.

116.    The Knoxville City curfew limited not just Plaintiffs' economic activity, but also their abilities to disseminate constitutionally protected speech and entertainment.

117.    The discrimination in this instance is both invidious and arbitrary.

118.    There is no compelling reason to treat the Plaintiffs differently from all other non-restaurant and non-alcohol selling businesses in the community.

## COUNT III-LOSS OF PERSONAL PROPERTY

119.    The Plaintiffs reallege and incorporate all paragraphs set forth herein.

120.    Defendants' illegal and unconstitutional acts set forth hereinabove have caused Plaintiffs the loss of personal property by way of lost revenues for having their beer permit suspended and liquor license revoked, as well as lost merchandise by the TABC's unlawful search and seizure.

121.    Loss of personal property in Tennessee carries with it a three-year statute. See T.C.A. § 28-3-105.

122.    As a direct result of the Defendants' illegal and unconstitutional acts set forth hereinabove the Plaintiffs have suffered hundreds of thousands of dollars in personal property loss and continue to suffer said losses on a daily basis.

## COUNT IV-CONSPIRACY TO VIOLATE CIVIL RIGHTS – 42 U.S.C. § 1985

123.    The Plaintiffs reallege and incorporate all paragraphs set forth herein.

124.    Upon information and belief, Defendants, and perhaps other yet unknown defendants conspired to deny the Plaintiffs' right to the Equal Protection of the Laws.

Case 3:23-cv-00181-CLC-DCP     Document 1     Filed 05/23/23     Page 19 of 21     PageID #: 19

125. Upon information and belief, Defendants, and perhaps other yet unknown defendants treated other bars, restaurants and night clubs, such as Paul's Oasis, differently and more beneficially regarding the curfew law by either not fining them or by not suspending their beer permit and revoking their liquor licenses and/or by doing both as was done to the Plaintiffs.

126. As a direct result, and upon information and belief, Defendants' conspiracy to violate the Plaintiffs' right to the Equal Protection of the Laws has caused the Plaintiffs hundreds of thousands of dollars in damages.

127. As a direct result, and upon information and belief, Defendants' conspiracy to violate the Plaintiffs' right to the Equal Protection of the Laws has caused Lawhorn severe mental and emotional anguish as set forth hereinabove. Said conspiracy is ongoing and continuing as are the damages resulting from same.

128. The conspiratorial acts of individuals named herein, as well unindicted co-conspirators may very well give rise to additional parties being added and a RICO Count added to this lawsuit after Plaintiffs have been able to conduct discovery.

**WHEREFORE, PLAINTIFFS PRAY FOR THE ENTRY OF A JUDGMENT AGAINST ALL DEFENDANTS, AS WELL AS OTHERS NOT YET KNOWN, BOTH JOINTLY AND SEVERALLY, IN THE AMOUNT OF $3,500,000, FOR A DECLARATORY JUDGMENT THAT THE CURFEW LAW FAILS TO MEET THE RATIONAL BASIS TEST AND IS THEREFORE UNCONSITTUIONALLY VOID, FOR A JURY TO TRY THIS CAUSE, FOR AN AWARD OF ATTORNEY'S FEES AND FOR AN AWARD OF DISCRETIONARY COSTS.**

Respectfully submitted,

s/Russ Egli
Russ Egli, BPR#24408

The Egli Law Firm
Counsel for Plaintiffs
The Wisdom Building
11109 Lake Ridge Drive, FL3
Knoxville, TN 37934
865-304-4125
865-274-8872
theeglilawfirm@gmail.com