UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BILLIARDS AND BREWS, LLC, and        )
RICHARD LAWHORN,                     )
                                     )
        *Plaintiffs*,                )
                                     )      Case No. 3:23-CV-181
v.                                   )
                                     )      Judge Curtis L. Collier
CITY OF KNOXVILLE, TENNESSEE,        )
SRGT. JOHN COWARD, and STEVEN        )
GROOMS,                              )
                                     )
        *Defendants*.                )

## <u>M E M O R A N D U M</u>

Before the Court are motions by Defendant Sergeant John Coward ("Defendant") to

dismiss the complaint and first amended complaint of Plaintiffs, Billiards and Brews, LLC

("B&B"), and Mr. Richard Lawhorn ("Plaintiff Lawhorn") under Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  (Docs. 21, 41.)  Plaintiffs assert claims against Defendant under 42

U.S.C. §§ 1983 and 1985, and Tennessee state law, arising from Defendant's enforcement of a city

ordinance related to the COVID-19 pandemic.  (Doc. 40.)  Defendant argues Plaintiffs fail to state

a claim, and Defendant is entitled to qualified immunity.  (Docs. 22, 29, 41.)

On September 25, 2023, Defendant filed a motion to dismiss the complaint.  (Doc. 21.)

Plaintiffs responded in opposition (Docs. 23, 24) and Defendant replied (Doc. 29).  On November

13, 2023, the Court granted Plaintiffs' motion to amend the complaint and indicated that the Court

would adjudicate Defendant's motion to dismiss (Doc. 21) in due course, as the parties had already

completed briefing on the motion.  (Doc. 39 at 4.)  Except for Defendant's motion to dismiss the

amended complaint (Doc. 41), the parties have not supplemented their filings related to

Defendant's motion to dismiss.  The defects raised in the original motion to dismiss remain in the

new pleading. (*See* Doc. 22; *Compare* Doc. 1 *with* Doc. 40.) Because Defendant has filed a motion to dismiss the amended complaint (Doc. 41), his motion to dismiss the original complaint (Doc. 21) will be **DENIED** as moot. The Court here considers the parties' filings (Docs. 22, 23, 24, and 29) relating to Defendant's motion to dismiss the original complaint to evaluate the instant motion (Doc. 41); *see Green v. Mason*, 504 F. Supp. 3d 813, 826 (S.D. Ohio 2002) (finding "if some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.").

On July 14, 2024, Plaintiffs filed a motion styled as a motion for leave to file a second amended complaint. (Doc. 48.) The Court construed the motion as requesting leave to file a supplemental pleading, and directed Plaintiffs to file a proposed supplemental pleading on or before September 9, 2024. (Doc. 51 at 2–3.) Plaintiffs have not filed a proposed supplemental pleading. Accordingly, the Court does not consider Document 48-1 in ruling on the pending motion to dismiss.

For the reasons set out below, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion to dismiss (Doc. 41).

## I.    BACKGROUND[1]

Plaintiffs' action against Defendant arises out of Defendant issuing citations for Plaintiff Billiards and Brews, LLC's violations of a Knoxville city ordinance adopted in response to the COVID-19 pandemic. (Doc. 40.) At the relevant time, Defendant was an officer with the Knoxville Police Department ("KPD") inspections unit. (*Id*. ¶ 5.) Plaintiffs also allege Defendant

---

[1] This summary of the facts accepts all the factual allegations in Plaintiffs' amended complaint as true, *see Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

was a "beer enforcement officer" with "authority to write citations for the sale or consumption of alcoholic beverages in a permitted establishment." (*Id*. ¶ 85.) Plaintiff Billiards and Brews, LLC ("B&B") is a legal entity formed and solely owned by Plaintiff Richard Lawhorn ("Mr. Lawhorn") and located in Knoxville, Tennessee. (*Id*. ¶¶ 1, 2, 10.) The majority of B&B's revenues come from the sale of beer and liquor. (*Id*. at ¶ 17.) B&B held a limited-service restaurant Liquor-by-the-Drink license and a beer permit, which together allowed B&B to sell liquor, wine, high-gravity beer, and beer in Knoxville. (*Id*. ¶¶ 11, 12.) For many years B&B stayed open later than 12:00 AM and was compliant with Knoxville city ordinances. (*Id*. ¶ 13.)

Plaintiff asserts that on May 22, 2020, the Tennessee Governor issued an executive order providing that counties with locally run county health departments, including Knox County, "shall have authority to issue additional orders or measures related to the containment or management of the spread of COVID-19, which may permit to a greater degree, or restrict to a greater degree, the opening, closure, or operation of businesses, organizations, or venues in those counties or the gathering of person' [sic]." (*Id*. ¶ 18.)

Between July and September 2020, the Knox County Board of Health (KCBH)—established under the Knox County Charter—adopted a series of regulations related to the COVID-19 pandemic. (*Id*. ¶ 21, 23, 24, 29.) The KCBH first required closure of all "bars" in Knox County and suspended permission to offer food and drink for on-premises consumption. (*Id*. ¶ 24.) The following week, KCBH amended its regulations to allow bars to remain open until 10:00 PM, and on September 16, 2020, extended permissible bar hours to 11:00 PM. (*Id*. ¶¶ 24, 29.)

Plaintiffs assert in November 2020, City of Knoxville Mayor Kincannon amended the Code of City Ordinances Chapter 4, Article II, Section 4-73(c) to provide, in relevant part, that KCBH regulations have the force of law and "[f]ailure to comply with the requirements set forth in any

3

such law may cause for a beer permit to be revoked or suspended." (*Id.* ¶ 35.) Plaintiffs assert Mayor Kincannon later amended the Code of City Ordinances Chapter 4, Article II, Section 4-32(b) ("ordinance 4-32(b)") to provide that hours for on-premises sale or consumption of alcoholic beverages would be further restricted if limited by lawful order of a regulatory authority, including KCBH. (*Id.* ¶ 36.) Following these amendments, KCBH adopted a regulation suspending restaurants and bars' permission to offer on-premises consumption between 10:00 PM and 5:00 AM. (*Id.* ¶ 37.) The practical effect of the ordinance and regulations was to impose a curfew of 10:00 PM upon businesses holding a beer permit. (*Id.* ¶¶ 37, 41, 46.) Notice of the curfew was distributed as a flyer by KPD. (*Id.* ¶¶ 39–41.) Plaintiff Lawhorn refused to close B&B at 10:00 PM as required by ordinance 4-32(b). (*Id.*)

Plaintiffs assert other businesses, including gyms and churches, were not subject to the 10:00 PM or 11:00 PM curfew, and were not forced to close. (*Id.* ¶ 46.) But "[o]ther Knoxville bars, restaurants, and night clubs were also subjected to the . . . curfew law," and Plaintiffs assert "upon information and belief none of them were punished as severely as B&B." (*Id.* ¶ 90.) Plaintiffs also allege "[b]ars restaurants, etc. were open in Knox County, Tennessee and had no threat of receiving a citation due to being open or serving alcohol." (*Id.* ¶ 45.) Plaintiffs assert the 10:00 curfew limited their economic activity and ability to "disseminate constitutionally protected free speech and entertainment." (*Id.* ¶ 44.) It also "limited times to play pool and dart tournaments." (*Id.*)

At all relevant times, Plaintiff Lawhorn was a "vociferous opponent of Mayor Kincannon" in the Knoxville media and press, and maintained that ordinance 4-32(b), as amended, was unconstitutional. (*Id.* ¶ 47.) "[D]uring an interview with WBIR Channel 10 News, Lawhorn

4

announced that he was thinking of running against Mayor Kincannon in the next election because he felt she was doing a bad job." (*Id*. ¶ 48.)

Plaintiffs assert the following facts "upon information and belief:" As a result of Plaintiff Lawhorn's statements in the media, "Mayor Kincannon retaliated and entered into a conspiracy with the other Defendants." (*Id*. ¶ 49.) Further, Mayor Kincannon told [Defendant] that if Lawhorn did not comply with the unlawful curfew she would shut down B&B." (*Id*. ¶ 50.) Plaintiffs allege "Mayor Kincannon and Attorney Alyson Dyer conspired with [Defendant], as well as other defendants [and] conspirators . . . to cite B&B for violations of [ordinance] 4-32(b) in order to take B&B's beer permit and liquor license." (*Id*. ¶¶ 55, 66.) Finally, Plaintiffs allege Mayor Kincannon and Attorney Dyer had Defendant "do almost daily 'curfew checks' at B&B." (*Id*. ¶ 79.)

B&B received eighteen citations by KPD for violations of "Knoxville's 'Covid Curfew,'" most of which were issued by Defendant. (*Id*. ¶¶ 52, 54.) Every citation Defendant issued to B&B "stated the reason for the violation was being in violation of Knoxville City Ordinance 4-32(b) by being 'open for business past the curfew." [sic] (*Id*. ¶ 53.) Defendant communicated with Tennessee Alcohol Beverage Commission ("TABC") Special Agent in Charge, Agent Grooms about the citations and Agent Grooms "executed a summary suspension of B&B's liquor license." (*Id*. ¶¶ 54, 56.)

On January 22, 2021, the TABC revoked B&B's liquor license without a hearing, and without Agent Grooms of the TABC independently investigating the allegations against B&B. (*Id*. ¶ 57.) Plaintiffs argue "Agent Grooms admitted he relied on Defendant telling him that [Plaintiff Lawhorn] was convicted of the eighteen . . . citations for suspending B&B's liquor

5

license." (*Id*. 105[2].) Plaintiffs also argue on January 28, 2021, Defendant "entered B&B's premises and noted that there was no alcohol being sold or consumed yet gave a citation to B&B for being open past the 'COVID CURFEW.'" (*Id*. ¶ 58.)

Plaintiffs allege Defendant "was conspiring by email transmission" with Agent Grooms, "to have B&B's liquor license revoked – without a hearing on same [sic]." (*Id*. ¶ 56.) Specifically, Defendant emailed TABC Agent Grooms: "Attorney showed is [sic] cards in his first hand. We'll be ready for him." (*Id*. ¶ 83.) On February 9, 2021, Defendant emailed TABC Agent Grooms: "Hopefully this will help us revoke his beer permit." (*Id*. ¶ 84.)

On February 9, 2021, a hearing was held "based on the 'Non-Compliance Complaint' brought by the City of Knoxville" even though the underlying citations issued to B&B had not yet been adjudicated. (*Id*. ¶ 61.) "Attorney Alyson Dyer handled the prosecution of the revocation of B&B's beer permit." (*Id*. ¶ 59.) On February 10, 2021, the administrative law judge issued a memorandum opinion and order. (*Id*. ¶ 62.) Even though "[t]he Knoxville City Beer Board requested a 75-day suspension of B&B's beer permit," the Judge revoked B&B's beer permit. (*Id*. ¶¶ 60, 64, 65.) Plaintiffs also assert "[t]he City of Knoxville Beer Board revoked B&B's beer permit." (*Id*. ¶ 75.)

On May 7, 2021, a City Court Judge affirmed B&B's curfew citations. (*Id*. ¶ 68.) On May 13, 2021, a hearing "regarding B&B's beer license, etc." was held in the Chancery Court for Knox County. (*Id*. ¶ 69.) At this stage Attorney Dyer no longer represented the City of Knoxville Beer Board, but she testified for the City of Knoxville during the hearing. (*Id*. ¶¶ 70, 72.) Defendant

---

[2] For clarity, in the Background section of this memorandum, the Court cites to paragraph numbers as labeled in the amended complaint pages 1–18.

"testified at the [r]evocation hearing that the law department interpreted the reading of" ordinance 4-32(b).  (*Id.* ¶ 76.)

On August 13, 2021, Defendant testified at the TABC hearing to revoke B&B's liquor license.  (*Id.* ¶ 73.)  Defendant stated that before ordinance 4-32(b) was codified, "KPD had no authority to enforce any board of health orders or resolutions."  (*Id.* ¶ 77.)  Plaintiffs argue Defendant was questioned at the hearing, and an attorney "proved" Defendant "perjured himself." (*Id.* ¶ 80.)  Specifically, Defendant was questioned about whether he wrote a citation in January even though "he did not see the sale or consumption of alcohol."  (*Id.*)  Additionally, Defendant was asked "if he could write a citation for a bar being opened passed [sic] 3:00 AM and they [sic] were shooting pool and playing darts but there was not any sale or consumption of alcoholic beverages and [he] admitted that he could not."  (*Id.* ¶ 86.)

In January 2022, a Judge "issued an order to revoke B&B's liquor-by-the-drink license." (*Id.* ¶ 106.)  The order stated, "Because the Respondent showed a continued and persistent unwillingness to abide by recognized legal authority in effect at the time, specifically laws that were enacted to protect the general health and safety of the citizens of Knox County during the COVID-19 pandemic, revocation of its license is reasonable and appropriate."  (*Id.*)  B&B appealed the revocation.  (*Id.* ¶ 108.)

Plaintiffs allege in July 2022, "a small paramilitary unit swarmed down on B&B purporting to have a search warrant."  (*Id.* ¶ 92.)  Plaintiffs allege they requested a copy of the search warrant from TABC, but did not receive a complete copy.  (*Id.* ¶ 93.)  TABC removed liquor belonging to Plaintiffs.  (*Id.* ¶ 95.)  Plaintiffs assert "[u]pon information and belief" that this "raid" was the result of the Defendants and "conspirators" joining together to "take down [Plaintiffs] once and

for all . . . in part to silence him." (*Id.* ¶ 100.)  Plaintiffs also allege in July 2022,[3] Knoxville Police "raided" B&B, "saying its undercover agents were able to buy alcoholic drinks at the business" between July 14–19.[4]  (*Id.* ¶ 108.)  This caused B&B to close down its business.  (*Id.*)

In May 2023, Plaintiff Lawhorn entered the Knoxville City Mayoral race as a candidate. (*Id.* ¶ 110.)  A warrant was issued for his arrest, which "silenc[ed] his campaign." (*Id.* ¶ 110.)  A journalist contacted Plaintiff Lawhorn regarding his pending arrest prior to Plaintiff Lawhorn's attorney receiving a copy of the warrant.  (*Id.* ¶ 111.)

Plaintiffs allege they have suffered "thousands of dollars in loss of personal property" and "lost millions of dollars in profits" as a result of B&B's beer and liquor permits being revoked. (*Id.* ¶¶ 89, 101.)  Plaintiff Lawhorn also alleges he "suffered severe mental and emotional anguish." (*Id.* ¶ 91.)

Plaintiffs filed the amended complaint, asserting four causes of action: (1) a claim under 42 U.S.C. § 1983 for violation of First Amendment rights; (2) violation of the Equal Protection Clause; (3) loss of personal property; and (4) a claim under 42 U.S.C. § 1985 for conspiracy to violate Plaintiffs' civil rights.  (*Id.* ¶¶ 102–128.)  The relief Plaintiff seeks is "the entry of a judgment against all defendants . . . both jointly and severally, in the amount of $3,500,000, for a declaratory judgment that the curfew law fails to meet the rational basis test and is therefore unconstitutionally void . . . [and] for an award of attorney's fees and for an award of discretionary costs." (*Id.* at 22.)

Defendant's motion to dismiss is now ripe.

---

[3] The Court assumes the reference to July 21, 2020, in paragraph 108 on page 17 of Plaintiffs' amended complaint (Doc. 40) is a scrivener's error and is meant to state July 21, 2022.

[4] It is unclear whether Plaintiffs refer to one or two separate "raids" in July 2022, or if the amended complaint describes the same event twice.

8

## II.    STANDARD OF REVIEW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept all the factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005)). "[A]llegations asserted upon information and belief are not *per se* insufficient to withstand a Rule 12(b)(6) motion; the Court must consider the pleading's factual allegations as a whole. *Glob. Licensing, Inc. v. Namefind Ltd. Liab. Co.*, 582 F. Supp. 3d 467, 479 (E.D. Mich. 2022) (*citing Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (stating "complaints grounding claims on 'information and belief' can survive a motion to dismiss" if they "set forth a factual basis for such belief"); *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 837 n.10 (N.D. Ohio 2021) ("Factual allegations based upon information and belief may be sufficient to support a plausible claim for purposes of Rule 12(b)(6) analysis where the factual allegations in the entire pleading allow the Court to draw the reasonable inference that defendant is liable for the conduct alleged.") (citation omitted) (emphasis in original). The court is not, however, bound to accept bare assertions of legal conclusions as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). "[N]aked assertions devoid of further factual enhancement contribute nothing to the sufficiency of the complaint." *Flagstar Bank*, 727 F.3d at 506 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and alteration omitted)).

In deciding a motion under Rule 12(b)(6), a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*

9

*v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Iqbal*, 556 U.S. at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Prows v. City of Oxford*, No. 1:22-cv-693, 2023 U.S. Dist. LEXIS 100018, at *7 (S.D. Ohio June 7, 2023) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678 (2009)). In determining whether the complaint satisfies facial probability, a court must "draw on its judicial experience and common sense." *See id.* at 679.

If a party presents matters outside the pleadings in connection with a motion to dismiss, the court must either exclude those matters from consideration or treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

10

### III.     DISCUSSION[5]

Plaintiffs plead four counts[6] against Defendant:[7] (1) violation of 42 U.S.C. § 1983 for violation of First Amendment rights; (2) violation of the Equal Protection Clause; (3) loss of personal property; and (4) conspiracy to violate civil rights under 42 U.S.C. § 1985. The Court addresses each in turn.

### A.     42 U.S.C. § 1983 – First Amendment

Plaintiffs assert a claim against all defendants under 42 U.S.C. § 1983 for violation of their First Amendment rights.  (Doc. 40 ¶¶ 102–112.)

"Section 1983 creates a cause of action against any person who, acting under color of state law, abridges 'rights, privileges, or immunities secured by the Constitution and laws.'" *Clayton v. Hogan*, No. 3:22-cv-00936, 2023 U.S. Dist. LEXIS 205431, at *70 (M.D. Tenn. Nov. 16, 2023) (citing 42 U.S.C. § 1983).  "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citation omitted).  "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (citation omitted).

---

[5] Because Defendant has not raised the statute of limitations as a defense, the Court declines to evaluate whether any portion of Plaintiffs' amended complaint is barred by the statute of limitations.  *See Haskell v. Wash. Twp.*, 864 F.2d 1266, 1273 (6th Cir. 1988); *Wallace v. Coffee Cty.*, 852 F. App'x 871, 874 (6th Cir. 2021).

[6] Federal Rule of Civil Procedure 10(b) requires separate claims to be alleged in separate counts.

[7] Plaintiffs specify they assert Count I against all defendants.  They do not specify the defendants to which Counts II–IV apply.  Based on the facts asserted in Plaintiffs' amended complaint, the Court assumes Plaintiffs intended to assert all four claims against Defendant.

As an initial matter, the Court considers Plaintiffs' assertion that they pled a § 1983 claim against Defendant in both his official and individual capacities. (Doc. 24 at 2.) With regard to an official-capacity claim, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Courts within the Sixth Circuit typically dismiss official-capacity claims as redundant where the relevant local governmental entity is also a party. *Scott v. Tipton Cnty.*, No. 10-2616, 2011 U.S. Dist. LEXIS 67313, at *9 (W.D. Tenn. June 22, 2011) (collecting cases). Here, because Defendant was an officer for the City of Knoxville at all times relevant to Plaintiffs' claim, all official-capacity claims against him are redundant to those brought against the City of Knoxville, which is also a named Defendant. *See Graham*, 473 U.S. at 166; *Whiting v. City of Athens*, No. 3:23-cv-220, 2023 U.S. Dist. LEXIS 187213, at *7–8 (E.D. Tenn. Oct. 18, 2023) (citations omitted). The Court will **GRANT** Defendant's motion and **DISMISS** Plaintiffs' § 1983 claim for violation of the First Amendment against Defendant in his official capacity. The Court now turns to Plaintiffs' individual-capacity claim.

Defendant argues Plaintiffs' individual-capacity § 1983 claim against him should be dismissed because he is entitled to qualified immunity. (Doc. 22 at 2; Doc. 41 at 1.) Defendant states the standard for qualified immunity and argues Plaintiffs "cannot point to 'binding precedent' . . . which establishes a constitutional right for a business to remain open in the face of a municipal ordinance requiring closure because of COVID-19." (*Id*. at 8, 12.) He asserts a similar statute has never been held unconstitutional. (*Id*. at 12.) For that reason, Defendant argues he cannot be held liable for carrying out his official duties by issuing citations for violations of ordinance 4-32(b). (*Id*.) Plaintiffs argue Defendant waived a qualified immunity defense because

he raised it in a perfunctory manner and "did not address the elements of qualified immunity as they related to each of his actions." (Doc. 24 at 2.)

Issues raised "in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). "Qualified immunity is an affirmative defense which must be affirmatively pleaded." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted). The defense "not only protects a defendant from liability but may also protect a defendant from the burdens of trial and discovery." *Id*. "[A] qualified immunity defense can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss." *Id*.

Here, Defendant raised qualified immunity in his motions to dismiss the complaint. (Doc. 21 at 1; Doc. 41 at 1.) Defendant's memorandum in support of his motion to dismiss stated the standard for qualified immunity along with argument supporting his position. (Doc. 22 at 7–12.) Accordingly, the Court finds Defendant affirmatively pleaded qualified immunity.

"After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citation omitted). "Officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (citation omitted). The Court "can address these requirements in either order," and if one is lacking the Court need not address the other. *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Barton v. Martin*,

949 F.3d 938, 947 (6th Cir. 2020) (citation omitted). To meet this standard, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted).

Here, Plaintiffs assert their First Amendment rights were violated by the "curfew imposed by ordinance [4-32(b)]." (Doc. 40 ¶¶ 106–107[8].) According to Plaintiffs, the curfew limited "B&B's economic activity . . . ability[y] to disseminate constitutionally protected free speech and entertainment . . . [and] times to play pool and dart tournaments." (Doc. 40 ¶ 44.) Plaintiffs also assert a First Amendment retaliation claim.[9]

The parties have provided the Court with little argument regarding Plaintiffs § 1983 First Amendment claim. Defendant generally argues "multiple courts have rejected constitutional challenges to local regulations and ordinances which have been enacted to combat the spread of [COVID-19]." (Doc. 22 at 10.) Defendant does not specifically address the First Amendment retaliation claim, nor do Plaintiffs argue it in their response.

### 1. Enforcement of Ordinance 4-32(b):

The Court first considers Plaintiffs' claim that the covid curfew violated their First Amendment rights. "[T]he Supreme Court has never denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated." *Freed v. Thomas*, 81 F.4th 655, 660 (6th Cir. 2023) (quoting *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441

---

[8] For clarity, the Court here cites to paragraphs 106–107 as labeled on page 19 of the amended complaint.

[9] Plaintiffs do not specifically reference First Amendment retaliation in the Count I section of their amended complaint. But the facts they incorporate by reference into Count 1 suggest Plaintiff intended to make this claim. (*See* Doc. 40 ¶ 102.) For the purpose of the pending motion to dismiss, the Court construes Plaintiffs' amended complaint as asserting a First Amendment retaliation claim.

14

(6th Cir. 2016)) (emphasis removed). "The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and fragrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does." *Pierson v. Ray*, 386 U.S. 547, 555 (1967).

Here, Plaintiffs allege ordinance 4-32(b) and the KCBH regulations at issue were improperly enacted. (*See* Doc. 40 ¶¶ 23, 29, 35– 37.) They do not, however, set forth a factual basis for this allegation. Rather, Plaintiffs state legal conclusions, which the Court is not required to take as true at the motion-to-dismiss stage. *See ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 748 n.13 (M.D. Tenn. 2021). While there may be laws that are "so grossly and flagrantly unconstitutional that any reasonable officer would decline to enforce them," the law and regulations at issue here are not. *See Citizens in Charge*, 810 F.3d at 442; *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 702, 706–07 (1986); *Memphis v. Shelby Cnty. Health Dep't*, No. 2:20-cv-02497-JTF, 2020 U.S. Dist. LEXIS 255447, at *7 (W.D. Tenn. July 30, 2020). Plaintiffs do not assert that a court found the law or regulations unconstitutional. Because Defendant "acted in the face of legislative action . . . and judicial inaction," he did not violate clearly established law or otherwise act unreasonably by enforcing the covid curfew against Plaintiffs. *Citizens in Charge*, 810 F.3d at 441.

Defendant is entitled to qualified immunity with regard to his enforcement of ordinance 4-32(b) against Plaintiffs to the extent Plaintiffs claim Defendant violated their First Amendment rights by limiting B&B's economic activity, dissemination of speech and entertainment, and time

15

to play pool and darts.  The Court will **GRANT** the motion to dismiss for failure to state a claim as to Plaintiffs' § 1983 claim under this theory.

### 2. First Amendment Retaliation

The Court turns next to Plaintiffs' First Amendment retaliation claim.  The First Amendment "protects against retaliation for 'protected conduct,'" including running for political office and political speech.  *Heard v. Landfair*, No. 23-1277, 2024 U.S. App. LEXIS 62, at *4 (6th Cir. Jan. 2, 2024); *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021) (citations omitted).  To make out a cognizable claim of First Amendment retaliation, a plaintiff must show:

> (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct.

*Kubala*, 984 F.3d at 1139 (citations omitted).  "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper."  *Bloch v. Ribar*, 156 F.3d 673, 681-82 (6th Cir. 1998).

"[R]etaliation 'rarely can be supported with direct evidence of intent.'"  *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)).  The Sixth Circuit has "not found that temporal proximity alone can establish retaliatory motive."  *Sanders v. Genesee Cnty.*, No. 22-1596, 2023 U.S. App. LEXIS 17975, at *17 (6th Cir. July 14, 2023) (citation omitted).  But "[t]he temporal proximity between the protected conduct and the adverse action can provide circumstantial evidence of retaliatory motive."  *Id*.

In the context of retaliatory arrest claims, the Supreme Court has held the plaintiff must "plead and prove the absence of probable cause for the arrest."  *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019) (citing *Hartman v. Moore*, 547 U.S. 250, 263, 265–66 (2006)).  "Although probable

16

cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406 (citation omitted). "[T]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 407.

Here, Plaintiffs allege Defendant issued citations to B&B in retaliation for Mr. Lawhorn's protected speech. Plaintiffs specifically assert Plaintiff Lawhorn was a "vociferous opponent of Mayor Kincannon" in the media and press, maintained that ordinance 4-32(b), as amended, was unconstitutional, and "announced that he was thinking of running against Mayor Kincannon in the next election because he felt she was doing a bad job." (Doc. 40 ¶¶ 47–48.) B&B received eighteen citations for violations of ordinance 4-32(b), most of which were issued by Defendant. (*Id*. ¶¶ 52, 54.) Defendant emailed TABC Agent Grooms "Attorney showed is [sic] cards in his first hand. We'll be ready for him" (*Id*. ¶ 83) and "Hopefully this will help us revoke his beer permit." (*Id*. ¶ 84.) Plaintiffs assert "upon information and belief" that none of the other Knoxville bars, restaurants, and night clubs to which ordinance 4-32(b) applied were "punished as severely as B&B." (*Id*. ¶ 90.) Plaintiffs also allege "[b]ars restaurants, etc. were open in Knox County, Tennessee and had no threat of receiving a citation due to being open or serving alcohol." (*Id*. ¶ 45.)

While this is not a retaliatory arrest case, the principle of the Supreme Court's holding in *Nieves* applies. Just as arrests without probable cause can support a First Amendment claim, so can retaliatory enforcement of the law. *See Campbell v. Mack*, 777 F. App'x 122, 137 (6th Cir. 2019) (finding the argument that the case involved retaliatory search rather than retaliatory arrest

17

was a "distinction without a difference, particularly in the context of applying qualified immunity."). Plaintiffs' admission that B&B stayed open past the curfew, giving Defendant probable cause to issue citations to B&B, does not defeat Plaintiffs' First Amendment retaliation claim. The Court first considers Defendant's defense of qualified immunity, then turns to whether Plaintiffs have pleaded sufficient facts for this claim to survive Defendant's 12(b)(6) motion to dismiss.

First, Defendant is not entitled to qualified immunity with respect to Plaintiffs' First Amendment retaliation claim. When the events at issue occurred, the right to be free from retaliatory enforcement by police officers for asserting one's First Amendment rights was "sufficiently clear" that a reasonable officer would have known that retaliating against Plaintiffs in response to Plaintiff Lawhorn's opposition of Mayor Kincannon would violate Plaintiffs' First Amendment rights. *See Nieves*, 587 U.S. at 398; *Campbell*, 777 F. App'x at 136; *Barton*, 949 F.3d at 947. Plaintiffs' failure to identify a case with similar or analogous facts does not entitle Defendant to qualified immunity, at least at this stage.

The Court turns next to whether the amended complaint states a claim that is plausible on its face. *See Twombly*, 550 U.S. at 570. There is no dispute regarding the first element of First Amendment retaliation: "the right to criticize public officials is clearly protected by the First Amendment." *Bloch*, 156 F.3d at 678 (citation omitted). Second, Plaintiffs allege Defendant issued eighteen citations to B&B, which a reasonable factfinder could find sufficiently adverse to "deter a person of ordinary firmness" from speaking in opposition to the Mayor and local law. *See Kubala*, 984 F.3d at 1139 ("Adverse actions beyond those that create only de minimis negative consequences offend the Constitution."). Lastly, Plaintiffs plead facts to sufficiently allege a causal connection between the adverse action and Plaintiffs' protected speech. At this stage, the

18

Court draws all reasonable inferences in favor of Plaintiffs. Plaintiffs do not specifically allege Defendant knew other bars and restaurants violated the covid curfew and exercised his discretion not to issue citations to them. But Defendant's emails, the apparent closeness in time of the citations to Plaintiff Lawhorn's statements, and the alleged discrepancy between the way Defendant treated B&B compared to other businesses are circumstantial evidence of a causal connection between Defendant's speech and the adverse action. The Court finds Plaintiffs state a claim for First Amendment retaliation that survives a motion to dismiss. *Se*e *Lamar v. Boles*, No. 3:23-cv-00747, 2024 U.S. Dist. LEXIS 16888, at *60 (M.D. Tenn. Jan. 31, 2024).

Defendant is not entitled to qualified immunity for the First Amendment retaliation claim, and Plaintiffs plead facts stating a claim under § 1983 that is plausible on its face. *See Twombly*, 550 U.S. at 570. Thus, the Court will **DENY** Defendant's motion to dismiss for failure to state a claim as to Plaintiffs' § 1983 claim of First Amendment retaliation.

### C. Equal Protection Clause

Plaintiffs allege a violation of the Equal Protection Clause of the United States Constitution as Count II of their complaint. (Doc. 40 ¶¶ 113–18.) Plaintiffs assert they were treated disparately from other businesses, including gyms and churches, similar in density, occupancy, and rise, which were not subject to the same curfews as bars and restaurants selling alcohol. (Doc. 40 ¶ 46.) They also assert the curfew imposed by Ordinance 4-32(b) and KCBH regulations "limited not just Plaintiffs' economic activity, but also their ability to disseminate constitutionally protected speech and entertainment." (*Id*. ¶ 116.) To the extent Plaintiffs assert violation of their right to protected speech and entertainment, the Court finds this redundant to Plaintiffs' First Amendment claims, and here considers only Plaintiffs' equal protection claim.

19

First, because § 1983 provides "a method for vindicating federal rights elsewhere conferred" *Baker* v. *McCollan*, 443 U.S. 137, 144 n.3 (1979), the Court construes Plaintiffs' equal protection claim against Defendant as a claim under § 1983. To the extent Plaintiffs brought this claim against Defendant in his official capacity, their § 1983 claim for violation of the Equal Protection Clause will be **DISMISSED WITH PREJUDICE** for the same reasons as their official-capacity First Amendment claim. *See Graham*, 473 U.S. at 166; *Whiting*, No. 3:23-cv-220, 2023 U.S. Dist. LEXIS 187213, at *7–8. The Court turns next to Plaintiffs' individual-capacity claim.

Defendant asserts he is entitled to qualified immunity. (Doc. 22 at 2.) Here, like the First Amendment enforcement claim, Plaintiffs do not plausibly assert that ordinance 4-32(b) and the KCBH regulations at issue were improperly enacted or that a court found the law or regulations unconstitutional. Ordinance 4-32(b) and the KCBH regulations are not "so grossly and flagrantly unconstitutional that any reasonable officer would decline to enforce them." *See Citizens in Charge*, 810 F.3d at 442; *Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir. 2003) ("There is no basis in law for the argument that the right to pursue one's chosen profession is a fundamental right for the purpose of invoking strict scrutiny under the Equal Protection clause."); *Cooper*, 517 F. Supp. 3d at 745–46, 749–50 (finding rational basis for distinction between restaurants and gyms and protests with regard to covid regulations).[10] Because Plaintiffs' Equal Protection claim is based on Defendant's enforcement of a presumptively constitutional law, Defendant is entitled to qualified immunity. *See Citizens in Charge*, 810 F.3d at 441.

---

[10] Plaintiffs assert Defendant "attempt[ed] to defraud this Court" by "refer[ing] to a "broken cite" to *Cooper*. (Doc. 24 at 6.) To the extent Plaintiffs intend to allege Defendant's counsel violated the duty of candor toward the tribunal, the Court declines to infer such violation. The Court notes that Plaintiffs' response also includes an incomplete citation. (*See id.* at 16.)

Defendant is entitled to qualified immunity with regard to Plaintiffs' equal protection claim. Thus, the Court will **GRANT** the motion to dismiss for failure to state a claim as to Plaintiffs' § 1983 claim for violation of the Equal Protection Clause, which will be **DISMISSED WITH PREJUDICE**.

### D. Loss of Personal Property

Plaintiffs assert a loss of property claim. (Doc. 40 ¶¶ 119–122.) Plaintiffs do not, however, specify the law or theory under which they assert this claim. (*Id*.) The only statute Plaintiffs cite under Count III of their amended complaint is the Tennessee statute of limitations for property claims under state tort law, Tennessee Code Annotated § 28-3-105. (*Id*. ¶121.) This statute does not create a cause of action. While Defendant may have notice of the underlying factual allegations, Plaintiffs fail to provide Defendant with adequate notice of the specific personal property loss claim against him. *See* Fed. R. Civ. P. 8(a)(2).

Plaintiffs have not stated a claim of personal property loss that is plausible on its face. *See Twombly*, 550 U.S. at 570. Thus, the Court will **GRANT** the motion to dismiss for failure to state a claim as to Count III, which will be **DISMISSED WITH PREJUDICE**.

### E. 42 U.S.C. § 1985

To assert a cognizable claim for conspiracy to interfere with civil rights under § 1985(3), "a plaintiff must allege specific facts that, taken together, plausibly suggest that (1) two or more individuals conspired . . . for the purpose of depriving him of the equal protection of the laws, (2) they acted to further that conspiracy, and (3) he was injured as a result." *Gregory v. Louisville/Jefferson Cty. Metro Gov't*, Civil Action No. 3:21-cv-577-CHB, 2021 U.S. Dist. LEXIS 247340, at *14-15 (W.D. Ky. Dec. 29, 2021) (quoting *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). A plaintiff must also establish "some racial, or perhaps otherwise class-based,

invidiously discriminatory animus." *Bartell v. Lohiser*, 215 F.3d 550, 559 (6th Cir. 2000) (citing *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829 (1983)). The Court of Appeals for the Sixth Circuit has held that § 1985(3) only covers conspiracies against: (1) classes who receive heightened protection under the Equal Protection Clause; and (2) "those individuals who join together as a class for the purpose of asserting certain fundamental rights." *Bartell*, 215 F.3d at 560 (citing *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir. 1980)).

Here, Plaintiffs' concern is all defendants, and perhaps others, conspired against Plaintiffs to treat them less favorably than other bars, restaurants, and clubs subject to the same COVID-19 curfew regulations. (*Id.* ¶¶ 124–126.) Specifically, Plaintiffs assert the defendants fined B&B, suspended B&B's beer permit, and revoked its liquor license, but did not do the same to similar businesses.

Plaintiffs do not satisfy the Rule 8 plausibility requirement for the claim of conspiracy to violate civil rights. Plaintiffs do not plead facts to suggest Defendant conspired against them based upon a racial or other "class-based, invidiously discriminatory animus." *See Bartell*, 215 F.3d at 559. Plaintiffs also do not allege they belong to a class which receives heightened protection under the Equal Protection Clause, or a group joined together as a class in order to assert fundamental rights. *See id.*

Plaintiffs have not stated a claim under § 1985 that is plausible on its face. *See Twombly*, 550 U.S. at 570. Thus, the Court will **GRANT** the motion to dismiss for failure to state a claim as to Plaintiffs' § 1985 claim for conspiracy to violate civil rights, which will be **DISMISSED WITH PREJUDICE**.

22

## IV.     CONCLUSION

Defendant's motion to dismiss the original complaint (Doc. 21) will be **DENIED** as moot. Defendant's motion to dismiss the amended complaint (Doc 41) will be **GRANTED IN PART** and **DENIED IN PART**.  Defendant's motion to dismiss Plaintiffs' Equal Protection Clause, property loss, and § 1985 claims will be **GRANTED,** and Plaintiffs' claims will be **DISMISSED WITH PREJUDICE**.  Defendant's motion will be **GRANTED IN PART** as to Plaintiffs' § 1983 claim for violation of the First Amendment.  Specifically, Defendant's motion will be **GRANTED** as to Plaintiffs' claim that Defendant violated their First Amendment rights by enforcing ordinance 4-32(b) against them, thereby limiting B&B's economic activity, dissemination of speech and entertainment, and time to play pool and darts.  Defendant's motion will be **DENIED** as to Plaintiffs' First Amendment retaliation claim.

**AN APPROPRIATE ORDER WILL ENTER.**


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**