UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BILLIARDS AND BREWS, LLC, and <br> RICHARD LAWHORN, <br><br> *Plaintiffs*, <br><br> v. <br><br> CITY OF KNOXVILLE, TENNESSEE, <br> *et. al.*, <br><br> *Defendants*. | ) <br> ) <br> ) <br> ) <br> ) Case No. 3:23-cv-181 <br> ) <br> ) Judge Curtis L. Collier <br> ) Magistrate Judge Debra C. Poplin <br> ) <br> ) <br> ) |

**M E M O R A N D U M**

Before the Court is Plaintiffs' motion for leave to file a second amended complaint. (Doc. 77.) Plaintiffs move to add the City of Knoxville's Police Chief, Paul Noel, as a defendant and to assert two claims of retaliation in violation of the First Amendment brought under 42 U.S.C. § 1983 against the City of Knoxville, Tennessee, (the "City") and Chief Noel. Defendants responded to the motion (Doc. 86), and Plaintiffs replied (Doc. 89).

**I. BACKGROUND**

During the COVID-19 pandemic, the City adopted by ordinance a Knox County Health regulation requiring restaurants and bars serving food and alcohol to close in-house service after 10 p.m. This action arises from disputes over the City's efforts to enforce the 10 p.m. curfew on Plaintiff Billiards and Brews, LLC ("B&B"), a sports bar owned by Plaintiff Richard Lawhorn in Knoxville, Tennessee.

On May 23, 2023, B&B and Lawhorn filed this action against the City, the Tennessee Alcohol Beverage Commission ("TABC"), and Sergeant John Coward of the Knoxville Police Department. (Doc. 1.) Plaintiffs asserted the following claims against Defendants: (1) violations

of their rights under the First Amendment brought under 42 U.S.C. § 1983 (Doc. 1 ¶¶ 102–12), (2) violations of their rights under the Equal Protection Clause (*id.* ¶¶ 113–18), (3) conspiracy to violate their civil rights brought under 42 U.S.C. § 1985 (*id.* ¶¶ 123–28), and (4) claims for loss of property in violation of state law (*id.* ¶¶ 119–21).  The Court discussed the allegations of the original complaint in detail in the Court's Memorandum addressing defendant Coward's motion to dismiss.  (Doc. 54.)  The Court will not repeat them here except to note that the original complaint included an allegation that "the conspirators . . . joined together to unlawful [sic] take down the Plaintiff once and for all with the July 2022 raid, in part to silence him."  (Doc. 1 ¶ 100, *see also id.* ¶ 92.)

By Order dated November 13, 2023 (Doc. 39), the Court granted Plaintiffs' first motion to amend the complaint (Doc. 30).  In the First Amended Complaint, Plaintiffs removed TABC as a defendant and added TABC agent Steven Grooms as a defendant.  (Doc. 40 ¶ 3.)  The First Amended Complaint also added averments concerning an arrest warrant Defendants issued for Plaintiff Lawhorn after he announced he was running for mayor of the City in May 2023, thereby "silencing his campaign."  (*Id.* ¶ 110.)

On December 27, 2024, Plaintiffs filed their motion to amend (Doc. 77), attaching a proposed second amended complaint ("the Proposed Complaint") (Doc. 77-1).  The Proposed Complaint adds Chief Noel as a defendant and keeps the City as a defendant.  (Doc. 77-1 ¶¶ 1–4.)  The Proposed Complaint also abandons the claims for (1) violations of the First Amendment brought under § 1983 arising from Defendants' alleged conduct occurring more than one year *before* May 23, 2023, (2) conspiracy to violate civil rights brought under § 1985, (3) violations of the Equal Protection Clause, and (4) loss of property in violation of state law.  The Proposed Complaint asserts only two claims, both brought under 42 U.S.C. § 1983, for retaliation for

exercising First Amendment rights based on events occurring less than one year before Plaintiffs filed their original complaint on May 23, 2023.

The first claim, Count I, arises from the execution of a search warrant on B&B in July 2022. (Doc. 77-1 ¶¶ 49–55.) The second claim, Count II, arises from Plaintiff Lawhorn's arrest sometime during or after May 2023. (*Id.* ¶¶ 39–40, 56–63.) According to the Proposed Complaint:

- Lawhorn spoke out against the COVID-19 curfew and Mayor Indya Kincannon and announced he would be running for mayor against Mayor Kincannon. (*Id*. ¶¶ 22–23.)

- In July 2022, a "small paramilitary unit swarmed down on B&B purporting to have a search warrant." (*Id.* ¶ 26.)

- "Upon information and belief, said search warrant was obtained through fraud perpetrated by Knoxville law enforcement agents." (*Id.* ¶ 27.) The search warrant was unsupported by any affidavit or declaration of facts to establish probable cause, and the judge who signed the warrant did so without reading the application. (*Id.*)

- "Upon information and belief, neither the defendants, nor the City, nor other agents of the City, had probable cause to support the raid performed on the plaintiffs in July 2022." (*Id.* ¶ 28.)

- Other Knoxville bars and restaurants were subject to the curfew, but "[u]pon information and belief, the defendants and other agents of the City knew that other Knoxville bars . . . were violating said curfew. . . . However, upon information and belief none of these other Knoxville bars . . . were punished as severely" as B&B or Lawhorn. (*Id*. ¶ 29.)

- The TABC did not have a valid search warrant for the July 2022 raid, confiscated thousands of dollars' worth of liquor from Plaintiffs during the search, and have never produced a revocation order despite many requests. (*Id.* ¶¶ 31–33.)

- "Upon information and belief, the defendant conspirators . . . conspired together, by communicating, planning, and acting to unlawfully retaliate against the Plaintiffs with the specific intent to, once and for all, shut down plaintiffs' business with the July 2022 raid." (*Id.* ¶ 34.)

- "Upon information and belief, said July 2022 raid was motivated, at least in part, to silence plaintiff Lawhorn regarding his opposition to Mayor Kincannon." (*Id.* ¶ 35.)

- "Upon information and belief, as a result of Lawhorn exercising his first amendment [sic] rights, Mayor Kincannon retaliated and entered into a conspiracy with the other Defendants . . . [and] conspirators not yet known to shut down B&B." (*Id.* ¶ 36.)

- In May 2023, Lawhorn "threw his hat into the Knoxville City Mayoral race as a candidate." (*Id*. ¶ 39.)

- "Immediately following Lawhorn's announcement that he was running for Mayor against Kincannon, and in violation of Mr. Lawhorn's First Amendment Rights, the Defendants, in concert with then and current Mayor Kincannon and other unknown co-conspirators, issued a warrant for Lawhorn's arrest silencing his campaign." (*Id*. ¶ 40.)

- "Upon information and belief, defendants lacked probable cause to support Lawhorn's arrest," and charges were later dismissed against him on the merits. (*Id*. ¶¶ 41–42.)

- "Upon information and belief, Lawhorn's arrest was motivated, at least in part, by Kincannon's and defendants' desire to retaliate against Lawhorn for challenging Kincannon in the Mayoral election." (*Id.* ¶ 43.)

## II. **STANDARD OF REVIEW**

With respect to the timing of a proposed amendment to the complaint, Rule 16 of the Federal Rules of Civil Procedure requires the Court to include a deadline for the amendment of pleadings in its scheduling order, and it permits modification of the scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(3)–(4); *see also Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).

Under Rule 15 of the Federal Rules of Civil Procedure, the "court should freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Beydoun v. Sessions,* 871 F.3d 459, 469 (6th Cir. 2017). However, leave to amend a complaint "may be denied where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment, etc.'" *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010) (emphasis omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Stanley v. W. Mich. Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (same).

## III. DISCUSSION

The deadline to amend pleadings expired on February 21, 2025. (Doc. 82, Sch. Ord. ¶ 6(a).) Plaintiffs' motion to amend (Doc. 77) was filed on December 27, 2024, well before the deadline. Thus, Rule 16(b) provides no impediment to Plaintiffs' amendment.

The City asserts, however, that the motion to amend should be denied on two independent grounds: undue delay in filing the motion and futility. The Court will therefore address Plaintiffs' amendment for undue delay and futility under Rule 15(a) in turn below.

### A. Undue Delay in Moving to Amend under Rule 15(a)

The City argues that Plaintiffs have been dilatory in moving to amend the complaint once again and allowing this amendment would cause it undue prejudice. (Doc. 86 at 7–9.) Delay in moving to amend "by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)); *see also Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) ("[D]elay alone, regardless of its length is not enough to bar it [amendment] if the other party is not prejudiced.") (citation omitted).

Generally, "allowing amendment after the close of discovery creates significant prejudice." *Duggins*, 195 F.3d at 834 (citing *Moore v. City of Paducah*, 790 F.2d 557, 560 (6th Cir. 1986)). Similarly, allowing an amendment after the expiration of the dispositive-motion deadline is also substantially prejudicial where a motion for summary judgment has already been filed. *Wade*, 259 F.3d at 459. "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Id.* If denying a motion to amend on the

5

basis of undue delay, the court must "give reasons for its decision, and . . . nam[e] prejudice to the opponent." *Duggins*, 195 F.3d at 834 (citing *Moore*, 790 F.2d at 560).

Plaintiffs alleged both events from which their First Amendment retaliation claims arise, *i.e.*, the July 2020 search of B&B and the 2023 arrest of Richard Lawhorn, in their First Amended Complaint. The Proposed Complaint could be viewed simply as an attempt to clarify their First Amendment claims before the Court. Nevertheless, Plaintiffs could have moved to amend the operative complaint months earlier for this purpose. As previously discussed, though, delay alone will not justify denial of a motion to amend. For the Court to deny a motion to amend on the basis of delay, the nonmoving party must suffer substantial prejudice if the amendment is allowed.

The City argues it has already filed a motion for summary judgment that will result in the dismissal of all claims and therefore will suffer substantial prejudice if the Court allows this amendment. (Doc. 86 at 7–9.) The City filed its motion for summary judgment on two grounds unrelated to the merits of the case: *res judicata* and the statute of limitations.[1] Because the parties did not need to complete discovery for the Court to address these two grounds, the Court granted the City's motion for a protective order (Doc. 93) and stayed all discovery. (Doc. 98.)

In support of its contention that it would be prejudiced if Plaintiffs' motion to amend were granted, the City cites *Wade v. Knoxville Utilities Board*, 259 F.3d 452, 459 (6th Cir. 2001), a case in which a plaintiff's motion to amend was denied for undue delay. In *Wade,* the court denied a

---

[1] Prior to filing this action, B&B had filed two other actions arising from the COVID-19 curfew. The first was filed in state court on March 29, 2021, and was removed to this Court. *See* Case No. 3:21-cv-120-CLC-HBG. B&B dismissed this action voluntarily pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (*Id.*, Doc. 15.) B&B, joined by Richard Lawhorn, filed the second action on February 8, 2022, in this Court. *See* Case No. 3:22-cv-00048-TRM-JEM. They voluntarily dismissed this action on May 23, 2022, pursuant to Rule 41(a)(1)(A)(i). (*Id.*, Doc. 6.) Under Rule 41(a)(1)(B), dismissal of a claim based on or including a claim the plaintiff previously dismissed "operates as an adjudication on the merits." *Id.*

motion to amend the complaint, noting that the plaintiff offered no justification for having waited nearly a year and a half before filing the motion to amend to add disability-discrimination claims. *Id.* at 459. However, the *Wade* court also noted delay alone was insufficient to deny a motion to amend. Instead, it found the amendment would have significantly prejudiced the defendant since the dispositive-motion deadline had expired, the defendant had filed a motion for summary judgment on all claims in the original complaint, and extensive discovery, including more than twenty depositions, had already been completed. *Id.*

Here, the current motion to amend was filed on December 27, 2024, and the deadline for dispositive motions was August 13, 2025. No discovery has been completed since the Court granted the City's motion for a stay of the case, and the Court has authority to amend the scheduling order to extend the discovery, dispositive-motion, and trial deadlines. Thus, the City's asserted grounds for undue prejudice are unavailing. The Court does not find that this amendment would cause undue prejudice to the City.

      **B.**      <u>**Futility of the Amendment under Rule 15(a)**</u>

The City next argues the motion to amend should be denied because it is futile. (Doc. 86 at 4–7.) A proposed amendment is futile if it cannot withstand review under the standards of a motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Beydoun*, 871 F.3d at 469 (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). Rule 12(b)(6) provides for the dismissal of claims which "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss, the Court must "construe the complaint in the light most favorable to the plaintiff and accept the complaint's well-pleaded factual allegations as true." *Stanley*, 105 F.4th at 867 (citing *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014)). All reasonable

7

inferences are drawn in favor of the plaintiffs. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)). However, the court need not accept as true "a legal conclusion couched as a factual allegation." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). The complaint "must include 'enough facts to state a claim to relief that is plausible on its face.'" *Stanley*, 105 F.4th at 867 (quoting *Twombly*, 550 U.S. at 570). "Thus, a plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The City argues that the proposed amendment is futile as to Chief Noel because it fails to allege facts to support supervisory liability under 42 U.S.C. § 1983. The City asserts the proposed amendment is futile as to the City because it does not allege Plaintiffs' harm was caused by a municipal policy, pattern, or practice. The Court will address both arguments in turn.

### 1. Supervisory Liability

The Proposed Complaint adds two claims against Chief Noel in his individual capacity under 42 U.S.C. § 1983 for First Amendment retaliation arising from the July 2020 search of B&B and the 2023 arrest of Plaintiff Lawhorn.[2] The City contends these proposed claims against Chief Noel are futile because the Proposed Complaint does not allege any facts that indicate he personally engaged in unconstitutional acts against Plaintiffs, and a government official cannot be

---

[2] Section 1983 is a remedial statute which does not itself create independent, substantive legal rights. To make a claim under 42 U.S.C. § 1983, the plaintiff is required to show that he has suffered a deprivation of a right, privilege, or immunity secured to him by the United States Constitution or other federal law and caused by a person acting under color of state law. *Gregory v. Shelby Cnty.,* 220 F.3d 433, 441 (6th Cir. 2000); *Baker v. Hadley,* 167 F.3d 1014, 1017 (6th Cir. 1999); *Valot v. Se. Loc. Sch. l Dist. Bd. of Educ.*, 107 F.3d 1220, 1225 (6th Cir. 1997). The City does not dispute that Mayor Kincannon and Chief Noel were acting under color of state law.

8

held vicariously liable for the actions of his subordinates under a claim alleging a constitutional violation brought under § 1983. (Doc. 86 at 6–7.)

The First Amendment protects against retaliation for "protected conduct," including running for political office and political speech. *Kubala v. Smith*, 984 F.3d 1132, 1139 (6th Cir. 2021) (citations omitted). To make out a cognizable claim of First Amendment retaliation, a plaintiff must show: (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct. *Id.* (citations omitted). "[A]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Bloch v. Ribar*, 156 F.3d 673, 681–82 (6th Cir. 1998).

The City's opposition to Plaintiffs' proposed First Amendment retaliation claims against Chief Noel focuses on the adverse-action element of the claims. To state a retaliation claim, a plaintiff must do more than allege a supervisor is liable for the adverse actions of his subordinates:

> An individual capacity claim based on supervisory liability, like all individual capacity claims, requires an allegation of personal liability. *See Peatross* [*v. City of Memphis*], 818 F.3d [233,] 240–41 [6th Cir. 2016]. . . . An official cannot be held liable for the constitutional violations of subordinates under a theory of respondeat superior, meaning that she "cannot be held liable simply because . . . she was charged with overseeing" subordinate officers who violated the plaintiff's constitutional rights. *Peatross*, 818 F.3d at 241. The complaint must plead that the official violated the Constitution through her own actions.

*Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025). For supervisory liability to attach here, Plaintiffs must show "minimum" wrongful conduct on the part of the supervisor and a causal connection between that conduct and the plaintiffs' injury. *Id.*

First, "there must be more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct." *Id.* (citation omitted). "[T]he plaintiff[s] [must] allege 'some active unconstitutional behavior on the part of the supervisor,' that is 'directly correlated with the plaintiff[s'] injury.'" *Id.* (internal citations omitted). Specifically, "at a minimum, the plaintiff[s] must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers. A supervisory official's failure to supervise, control, or train an offending subordinate is not actionable without this minimum showing." *Id.* (internal citation omitted).

Second, "there also needs to be 'a causal connection between the defendant's wrongful conduct and the violation alleged.' A causal connection is established when the supervisor's conduct, or lack thereof, could be reasonably expected to give rise to just the sort of injuries that a plaintiff alleges have occurred." *Id.* (internal citation omitted).

The City correctly observes that the only reference to Chief Noel by name in the Proposed Complaint is found in paragraph four, which identifies Noel as a defendant and states, "Noel . . . has been aware of the fact of and nature of the allegations set forth herein since the filing of the original complaint in this lawsuit." (Doc. 77 ¶ 4.) The City argues the Proposed Complaint makes no allegations that Chief Noel personally took any action to violate Plaintiffs' constitutional rights, and therefore, Plaintiffs fail to state a First Amendment claim against him in the Proposed Complaint. (Doc. 86 at 6–7.) Plaintiffs did not address this argument in their response brief.

The Court agrees. The Proposed Complaint does not allege sufficient facts to show that Chief Noel authorized, approved, or knowingly acquiesced in—either explicitly or implicitly—the unconstitutional conduct of the offending officers. The motion to amend is futile as to Chief Noel. Plaintiffs' motion to amend (Doc. 77) is **DENIED** as to all claims against Chief Paul Noel.

### 2. Custom, Practice, or Policy to Establish Municipal Liability

The City next argues the First Amendment retaliation claims in the Proposed Complaint are futile because Plaintiffs have not pleaded that the unconstitutional conduct occurred as a result of a municipal custom, practice, or policy. (Doc. 86 at 5–6.)

To successfully state a claim for liability against a municipality for alleged constitutional violations brought under § 1983, a plaintiff must "1) identify a municipal policy or custom; and 2) connect that policy or custom to the municipality that led to the alleged violation of [the plaintiffs'] constitutional rights." *Jarvis v. Marcum*, 77 F. App'x 308, 1 (6th Cir. 2023) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) and *Gregory v. Shelby Cnty.*, 220 F.3d 433, 442 (6th Cir. 2000)). A plaintiff fails to state a claim against a municipality if the plaintiff does not identify in the complaint a policy or custom on the part of the municipality which caused the unconstitutional conduct. *Phillips v. Cassidy*, No. 1:22-cv-239, 2022 WL 4390635, at *2 (E.D. Tenn. Sept. 22, 2022) ("Because he has not adequately pled any municipal liability, Plaintiff has likewise failed to state a claim against Defendants in their official capacities.") (citing *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993)). A plaintiff can make a showing of an illegal policy or custom for purposes of establishing municipal liability by demonstrating:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Plaintiffs contend they meet the second option: ratification by an official with final decision-making authority. Plaintiffs argue that it is "well established that the acts of an 'ultimate decisionmaker/final authority' to cause the municipality to act[,] i.e., the Mayor here, are acts of the municipality and are per se policy even if they are a one-time order by the mayor." (Doc. 89

at 3.) Plaintiffs are correct that a "single act by a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action ordered' may suffice in demonstrating that policy or custom." *Cady v. Arenac Cnty.*, 574 F.3d 334, 345 (6th Cir. 2009) (quoting *Pembaur*, 475 U.S. at 481). Courts look to state law to determine if a municipal official has this final decision-making authority:

> To determine whether final authority to make municipal policy is vested in a particular official, we must resort to state law. [*City of St. Louis v.*] *Praprotnik*, 485 U.S. [112,] 125 [(1988)] (plurality opinion); *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737 . . . (1989); *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989). This includes "state and local positive law," such as statutes, ordinances, and regulations, and less formal sources of law such as local practice and custom. *Jett*, 491 U.S. at 737; *Mandel*, 888 F.2d at 793.

*Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (internal parallel Supreme Court citations omitted).

According to Plaintiffs, the City's "Code of Ordinances" provides that "[t]he executive and administrative powers and responsibilities of the city shall be vested in the mayor." (Doc. 89 at 3.) Therefore, Plaintiffs argue Mayor Kincannon had final decision-making authority "when having the city arrest Lawhorn and when having the police force raid B&B without probable cause." (*Id.* at 3–4.)

The City's Charter supports Plaintiffs' position concerning the mayor's executive authority. Section 104 of the Charter provides in relevant part,

> The corporate and governmental authority and power of the City of Knoxville shall be vested in:
>
> An executive branch, headed by the mayor, who shall be the chief executive officer, and the executive branch shall be composed of such departments . . . . as may be provided by the general law of the State of Tennessee, this charter, or ordinance enacted pursuant thereto . . . .

Code of Ordinances, City of Knoxville, Tennessee, Part I – The Charter § 104. Section 305 of the City's Charter establishes, among other departments, the Police Department. *Id.* § 305. Section 303 of the City's Charter gives the mayor authority over the departments, including the ability to appoint and remove all heads of the departments:

> (A) The mayor is authorized to administer, supervise, direct and control the executive branch of the city. Such administration shall be by and through departmental directors and such other agencies as are prescribed in this charter, general law or ordinance.
> . . .
> (L) The mayor shall be responsible to the council for the proper administration of all city affairs and shall, to that end, have the power to appoint and remove all directors and heads of departments, officers and other employees except as otherwise provided for in this charter or by ordinance.

*Id.* § 303. Finally, the Charter cements the mayor's ultimate authority over the City's departments and its department heads by providing that the city council cannot remove the mayor: "The mayor shall be elected for a term of four (4) years and shall serve until a successor is elected and qualified. The mayor shall not be subject to suspension, discharge or removal by the city council." *Id.* § 302.

Accordingly, the Court finds the City's mayor has final decision-making authority in regard to how the Police Department is managed—which would include making decisions regarding whether a search warrant or an arrest warrant is sought. In turn, a final decision by the mayor concerning whether to seek a warrant, if the mayor made such a decision, would constitute a policy by the City. The dispositive issue, however, is whether Plaintiffs sufficiently pleaded facts to show that Mayor Kincannon did in fact make the final decisions regarding the arrest of Lawhorn and the raid of B&B. Plaintiffs "must demonstrate that a 'deliberate choice to follow a course of action'" was made by Mayor Kincannon. *See Burgess*, 735 F.3d at 478 (quoting

13

*Pembaur*, 475 U.S. at 483). Importantly, this course of action "must be shown to be the moving force behind or cause of the plaintiff[s'] harm." *Id.*

Plaintiffs claim that the "Mayor has hated Lawhorn ever since Lawhorn first publicly challenged the Mayor and her policies and abuses of authority and use of her position to retaliate against those that did not cower to her unlawful demands of the citizens of the City of Knoxville." (Doc. 89 at 4.) Without citing specific examples, Plaintiffs argue the Proposed Complaint includes factual allegations "that Mayor Kincannon acted with retaliatory intent when having the city arrest Lawhorn, and when having the police force raid B&B without probable cause." (*Id.* at 3–4.) The Proposed Complaint makes the following allegations against the City and Mayor Kincannon:

- "Upon information and belief, the defendant conspirators . . . conspired together, by communicating, planning, and acting to unlawfully retaliate against the Plaintiffs with the specific intent to, once and for all, shut down plaintiffs' business with the July 2022 raid." (Doc. 77-1 ¶ 34.)

- "Upon information and belief, said July 2022 raid was motivated, at least in part, to silence plaintiff Lawhorn regarding his opposition to Mayor Kincannon." (*Id.* ¶ 35.)

- "Upon information and belief, as a result of Lawhorn exercising his first amendment [sic] rights, Mayor Kincannon retaliated and entered into a conspiracy with the other Defendants . . . [and] conspirators not yet known to shut down B&B." (*Id.* ¶ 36.)

- "Immediately following Lawhorn's announcement that he was running for Mayor against Kincannon, and in violation of Mr. Lawhorn's First Amendment Rights, the Defendants, in concert with then and current Mayor Kincannon and other unknown co-conspirators, issued a warrant for Lawhorn's arrest silencing his campaign." (*Id*. ¶ 40.)

- "Upon information and belief, defendants lacked probable cause to support Lawhorn's arrest," and charges were later dismissed against him on the merits. (*Id*. ¶¶ 41–42.)

- "Upon information and belief, Lawhorn's arrest was motivated, at least in part, by Kincannon's and defendants' desire to retaliate against Lawhorn for challenging Kincannon in the Mayoral election." (*Id.* ¶ 43.)

Viewing the facts in the light most favorable to Plaintiffs, Plaintiffs allege that Lawhorn's arrest and the search of B&B were unconstitutional acts in violation of the First Amendment.

However, Plaintiffs fail to allege any facts that demonstrate Mayor Kincannon, as the final policymaker, was the leading force behind the unconstitutional acts. *See Burgess*, 735 F.3d at 478. Plaintiffs' conclusory allegations "upon information and belief" that Mayor Kincannon "had the police force" arrest Lawhorn and search B&B would not withstand a motion to dismiss for failure to state a claim. *See Beydoun*, 871 F.3d at 469.

The Court of Appeals for the Sixth Circuit has held that statements based on "information and belief" are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). Such allegations are "naked assertions devoid of further factual enhancement," *id.* (quoting *Iqbal*, 556 U.S. at 678), which "contribute nothing to the sufficiency of the complaint," *id.* "The mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014). Because the Proposed Complaint does not allege sufficient facts to show the connection between a policy Mayor Kincannon ratified and the alleged violation of Plaintiffs' constitutional rights, the motion to amend is futile as to the City. Plaintiffs' motion to amend (Doc. 77) is **DENIED** as to the claims against the City.

IV. **CONCLUSION**

For the reasons stated in this Memorandum, Plaintiffs' motion to amend the First Amended Complaint (Doc. 77) will be **DENIED**. The first amended complaint (Doc. 40) remains the operative complaint.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**