| | | |
|---|---|---|
| BILLIARDS AND BREWS, LLC, and RICHARD LAWHORN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:23-CV-181-CLC-DCP |
| CITY OF KNOXVILLE, TENNESSEE, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is the Motion to Quash Subpoenas Pertaining to Former TABC Counsel Ryan Mercurio and TABC Agent Steven Grooms ("Motion to Quash") [Doc. 120], filed by the Tennessee Alcohol Beverage Commission ("TABC"). Defendant filed a Response and Joinder in Motion to Quash Subpoena [Doc. 122]. Plaintiffs filed a response in opposition to the motion and a cross motion to compel [Doc. 129]. TABC filed a reply in support of its motion and a response in opposition to the motion to compel [Doc. 133]. Plaintiffs filed a reply to their motion to compel [Doc. 134]. The motions are ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a).

For the reasons stated below, the Court **GRANTS** the motion [**Doc. 120**] and **DENIES AS MOOT** the motion [**Doc. 129**].

I.     **BACKGROUND**

Plaintiffs commenced this action on May 23, 2023, originally naming as Defendants: (1) the TABC; (2) the City of Knoxville, Tennessee ("City"); and (3) Sergeant John Coward ("Sergeant Coward"), an officer with the inspection's unit for the Knoxville Police Department

("KPD") [Doc. 1]. Later, Plaintiffs filed a First Amended Complaint [Doc. 40], naming Defendants: (1) Steven Grooms ("Agent Grooms"), TABC's Assistant Special Agent in Charge, in his individual and official capacities; (2) the City; and (3) Sergeant Coward [*Id.* at 1–2].

Plaintiff Billiards and Brews, LLC ("Plaintiff B&B") "held a limited-service restaurant Liquor-by-the-Drink license allowing it to sell liquor, wine, and high-gravity beer at a restaurant or bar in a city or county which has authorized the sale of alcoholic beverages for on-premise consumption issued by the TABC" [*Id.* ¶ 11]. Plaintiff Richard Lawhorn "is the sole-owner of [Plaintiff] B&B" [*Id.* ¶ 2].

Plaintiffs allege that "[Plaintiff] B&B operated its establishment for many years well past 12 A.M." [*Id.* ¶ 13]. According to the Amended Complaint, "On May 22, 2020, Tennessee's Governor Bill Lee (hereinafter, "Governor Lee") issued Executive Order No. 38[,]" which generally gave Knox County the "authority to issue additional orders or measures related to the containment or management of the spread of COVID-19" [*Id.* ¶ 18]. Following this Executive Order, Plaintiffs allege that the City, the Knox County Health Board ("KCHB"), and Mayor Kincannon began issuing regulations and ordinances regulating the hours of certain businesses, including restaurants and bars [*Id.* ¶¶ 20–41]. Plaintiffs generally allege that such actions were done without authority [*Id.*]. Specifically, with respect to Mayor Kincannon, Plaintiffs claim that she amended Chapter 4, Article II, Section 4-32(b) ("Section 4-32(b)") of the Code of City Ordinances without authority [*Id.* ¶ 36]. It too pertained to curfews [*Id.*].

Plaintiffs claim that "Plaintiff Lawhorn has been a vociferous opponent of Mayor Kincannon in the Knoxville media/press about the unlawful amended [Section] 4-32[](b) being unconstitutional and in fighting for his constitutional rights and that of others he refused to close his business at 10 P.M." [*Id.* ¶ 47]. "[A]s a result of [Defendant] Lawhorn exercising [F]irst

2

[A]mendment rights, Mayor Kincannon retaliated and entered into a conspiracy with the other Defendants . . ., as well as defendants/conspirators not yet known[,] to shut down [Plaintiff] B&B" [*Id.*]. They allege that "Mayor Kincannon told [Sergeant] Coward that if [Plaintiff] Lawhorn did not comply with the unlawful curfew[,] she would shut down [Plaintiff] B&B" [*Id.* ¶ 50]. Plaintiffs claim that "[Plaintiff] B&B was cited 18 times by KPD for violations of the Knoxville's 'Covid Curfew'" [*Id.* ¶ 52]. Every violation related to Section 4-32(b) for "being 'open for business past the curfew'" [*Id.* ¶ 53]. Sergeant Coward issued most of the citations, and he "communicated the same with . . . Agent Grooms[,] who then executed a summary suspension of B&B's liquor license" [*Id.* ¶ 54]. According to Plaintiffs, "Mayor Kincannon and Attorney Alyson Dyer conspired with [Sergeant] Coward, as well as other defendants/conspirators not yet known, to cite [Plaintiff] B&B for violations of the amendment 4-32(b) in order to take [Plaintiff] B&B's beer permit and liquor license, thereby constituting an unconstitutional taking of [its] personal property" [*Id.* ¶ 55]. "Prior to [Plaintiff] B&B having a chance to be heard and defend itself against these unconstitutional citations," Plaintiffs allege that "[Sergeant] Coward was conspiring by email transmission, and perhaps by other means of communication, with Agent Grooms of the TABC to have B&B's liquor license revoked – without a hearing on same" [*Id.* ¶ 56]. Specifically, Sergeant Coward emailed Agent Grooms: "Attorney showed [h]is cards in his first hand. We'll be ready for him." [*Id.* ¶ 83]. On February 9, 2021, Sergeant Coward emailed Agent Grooms: "Hopefully this will help us revoke his beer permit" [*Id.* ¶ 84].

Plaintiffs claim that "[o]n January 22, 2021, the TABC revoked B&B liquor license without a hearing and without Agent Grooms independently investigating the allegations against [Plaintiff] B&B" [*Id.* ¶ 57]. A few days later, on January 28, 2021, Plaintiffs state that "Agent Grooms and [Sergeant] Coward unlawfully entered [Plaintiff] B&B's premises and noted that there was no

3

alcohol being sold or consumed yet gave a citation to [it] for being open past the 'COVID CURFEW'" [*Id.* ¶ 58]. "The Knoxville City Beer Board requested a 75-day suspension of [Plaintiff] B&B's beer permit[,]" and on February 10, 2021, an administrative law judge "revoked [Plaintiff] B&B's beer permit" [*Id.* ¶¶ 62, 65]. On May 7, 2021, City Court Judge Rosson affirmed [*Id.* ¶ 68].

Several months later, on August 13, 2021, Sergeant Coward testified at a TABC "hearing to revoke [Plaintiff] B&B['s] liquor license as a result of the Knoxville City Law Department's unlawful Covid shutdown flyers" [*Id.* ¶ 73]. Plaintiffs allege that "[t]he City of Knoxville Beer Board revoked B&B's beer permit" [*Id.* ¶ 75]. "In January 2022, Judge Waters[] issued an order to revoke [Plaintiff] B&B's liquor-by-the-drink license" [*Id.* ¶ 107].

Later, "[i]n July 2022, a small paramilitary unit swarmed down on [Plaintiff] B&B purporting to have a search warrant" [*Id.* ¶ 92]. The TABC provided Plaintiffs "an incomplete copy" of the search warrant [*Id.*]. Plaintiffs assert that "the TABC did not have a valid search warrant" [*Id.* ¶ 94].[1] This raid caused Plaintiff B&B to shut down [*Id.* ¶ 108].

In May 2023, Plaintiff Lawhorn ran for Knoxville City Mayor [*Id.* ¶ 110]. Defendants "issued a warrant for his arrest silencing his campaign" [*Id.*]. A journalist contacted Plaintiff Lawhorn prior to his arrest [*Id.* ¶ 111]. Plaintiffs question how the media knew about the arrest prior to Plaintiff Lawhorn or his attorney knowing about it [*Id.*].

Based on the above, Plaintiffs alleged: (1) a claim under 42 U.S.C. § 1983 for violation of First Amendment rights; (2) violation of the Equal Protection Clause; (3) loss of personal property; and (4) a claim under 42 U.S.C. § 1985 for conspiracy to violate Plaintiffs' civil rights [*Id.* ¶¶ 102–128].

---

[1]  Plaintiffs also state that a raid occurred on July 21, 2020 [Doc. 40 ¶ 108]. This appears to be the same raid referenced above and the date is merely a typographical error [*See* 54 p. 8 n.3].

Sergeant Coward moved to dismiss the Amended Complaint [Doc. 41], and on September 11, 2024, United States District Judge Curtis Collier dismissed all claims against Sergeant Coward except the First Amendment retaliation claim [*See* Docs. 54 pp. 23 & 55]. Later, on October 15, 2024, Judge Collier dismissed Agent Grooms for lack of service [Doc. 58]. Following this Order, Sergeant Coward filed a motion for summary judgment arguing that the allegations against him were time barred [Doc. 61]. Plaintiffs responded that they did not oppose the motion, so therefore, Judge Collier granted it and dismissed all claims against Sergeant Coward [Doc. 97].

On December 6, 2024, the City filed a motion for summary judgment [Doc. 64]. On September 16, 2025, Judge Collier granted in part and denied in part that motion [Doc. 101]. He dismissed all claims except Plaintiffs' First Amendment retaliation that occurred after May 23, 2022 [*Id.* at 20]. In recounting the facts relevant to this claim, Judge Collier noted:

> Plaintiffs allege facts that the City deprived them of their right to not be retaliated against for exercise of free speech under the First Amendment. According to the first amended complaint, "a small paramilitary unit swarmed down on B&B purporting to have a search warrant." Plaintiffs allege they requested a copy of the search warrant from TABC, but did not receive a complete copy. TABC removed liquor belonging to Plaintiffs. "Upon information and belief," the search warrant was invalid, and the raid was undertaken by "the conspirators" to "take down the Plaintiff once and for all with the July 2022 raid, in part to silence him." Plaintiffs further allege [Plaintiff] Lawhorn entered the mayoral race as a candidate. They assert the City, in concert with other unknown coconspirators issued a warrant for Plaintiff Lawhorn's arrest, which "silenced his campaign."

[*Id.* at 12–13 (citation modified)]. As noted above, the only claim that remains is Plaintiffs' First Amendment claim against the City [*See* Doc. 129 p. 4 ("The sole remaining claim is that the City engaged in First Amendment retaliation against Plaintiffs for [Plaintiff] Lawhorn's public criticism of Mayor Kincannon.")].

In February 2026, Plaintiffs mailed two subpoenas to the "Tennessee Alcoholic Beverage Commission, C/O [Executive Director] Russell Thomas" [Doc. 121 p. 3]. The first subpoena seeks documents and other records by Ryan Mercurio ("Attorney Mercurio") [Doc. 121-1], a former attorney with TABC [Doc. 121 p. 3]. The second subpoena seeks documents and other records by Agent Grooms [Doc. 121-2]. TABC asks that the Court quash the subpoenas because Plaintiffs did not personally serve them [Doc. 121 pp. 4–5], they violate Rule 45's geographical limit [*id.* at 5], they impose an undue burden [*id.* at 6–7], and they seek privileged material [*id.* at 8–11].[2]

Plaintiffs filed a response in opposition to the motion and a cross motion to compel [Doc. 129]. They contend that service was proper because the TABC received actual notice and that it waived any objections to service [Doc. 129 pp. 2–3]. Further, they argue that the geographical limit is not applicable to the production of documents [*Id.* at 3–4]. In addition, Plaintiffs contend that the subpoenaed information is relevant, and they deny the subpoenas are unduly burdensome [*Id.* at 4–5]. Finally, Plaintiffs assert that TABC's blanket assertions of privilege are overbroad and procedurally deficient [*Id.* at 5–7]. They request an order compelling "TABC to produce all non-privileged documents responsive to the subpoenas within fourteen (14) days" [*Id.* at 8].

TABC filed a reply to its motion and a response to Plaintiffs' cross motion [Doc. 133]. It argues that Plaintiffs' response and cross motion are untimely [*Id.* at 2]. In addition, TABC claims that the cross motion is procedurally improper because Plaintiffs combined their response and motion into one filing, and they failed to include a certificate of good faith pursuant to Rule 37 of

---

[2]    Following the motion, Defendant filed a Response and Joinder in Motion to Quash Subpoena [Doc. 122]. But Defendant does not explain how it has standing to join the motion. *See S.A. by Ameller v. Ober Gatlinburg, Inc.*, 348 F.R.D. 314, 317 (E.D. Tenn. 2025) ("Generally, a party has no standing to quash a subpoena directed at a nonparty, but an exception exists where the party seeking to quash claims a 'personal right or privilege with regard to the documents sought.'") (quoting *Schaumleffel v. Muskingum Univ.*, No. 2:17-CV-463, 2019 WL 3071851, at *2 (S.D. Ohio July 15, 2019)).

6

the Federal Rules of Civil Procedure [*Id.* at 2–3]. It maintains that service was improper and that the subpoenas violate the geographical limit [*Id.* at 3, 4]. The TABC claims that Plaintiffs cannot show a non-speculative need for the subpoenaed information, which renders the subpoenas unduly burdensome [*Id.* at 4–6]. In asserting its claims of privilege, the TABC argues that it has complied with Rule 45 [*Id.* at 5–7].

Plaintiffs filed a reply to their cross motion, stating that before the parties could meet and confer, TABC filed its motion to quash [Doc. 134 p. 2]. They acknowledge that their response was untimely but state that they have shown excusable neglect for their tardiness [*Id.* at 3]. They contend that service was proper and that the TABC's geographical argument misconstrues Rule 45 [*Id.* at 3–4]. They maintain that the subpoenaed information is relevant and not unduly burdensome to produce [*Id.* at 4–5]. Finally, they contend that TABC has failed to establish any applicable privilege [*Id.* at 5–6].

## II.     ANALYSIS

Rule 45 governs discovery from non-parties, including the right to command a nonparty to produce documents. *See* Fed. R. Civ. P. 45(a)(1)(D). A court "must quash or modify a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c); . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(ii)–(iv). As an initial matter, TABC and Plaintiffs dispute whether service of the subpoenas was valid and whether the subpoenas violate the geographical limit in Rule 45 [*See* Doc. 121 pp. 4–5; Doc. 129 pp. 3–4]. But the Court need not address these issues. Even if the subpoenas were proper, the Court finds that they are unduly burdensome.

"The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *United States v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:21-CV-84, 2024 WL 5657163, at *2 (E.D. Tenn. Nov. 4, 2024) (quoting *Pictsweet Co. v. R.D. Offutt Co.*, No. 3:18-cv-0722, 2020 WL 12968432, at *2 (M.D. Tenn. Apr. 23, 2020)). The United States Court of Appeals for the Sixth Circuit has explained, "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)); *see also Chattanooga-Hamilton Cnty. Hosp. Auth.*, 2024 WL 5657163, at *2 (discussing the same factors). Further, courts must "balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure.'" *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013) (quoting *Am. Elec. Power Co.*, 191 F.R.D. at 136). The party seeking to quash the subpoena bears the burden of proof. *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011). Even so, "the party who issued the subpoena has the burden of 'establish[ing] a need for the breadth of the information sought in response to [a non-party's] *prima facie* showing that the discovery [would be] burdensome." *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. at 253 (alterations in original and footnote omitted) (quoting *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 423–24 (Fed. Cir. 1993)).

TABC argues that "[a]ny claims that TABC or its employees, like Agent Grooms, conspired with the City or other actors, like [Sergeant] Coward, have been dismissed" [Doc. 121 p. 6 (citations omitted)]. "And those dismissed claims[,]" TABC asserts "largely related to actions

taken before May 2022, like the alleged conspiracy between [Agent] Grooms and Sergeant Coward to suspend [Plaintiff's] B&B's license in 2021" [*Id.* (emphasis and citation omitted)]. It contends that "all materials pertaining to Plaintiffs in any way in TABC's possession from 2022 through the present" it not necessary to support their claim against the City [*Id.* at 7]. Specifically, with respect to Attorney Mercurio, TABC argues that "Plaintiffs demand a wide array of materials involving [him], including a telephone log of every call that [he] made at TABC from 'May 1, 2022 through present' and documents 'regarding [Attorney] Mercurio's departure' from the TABC" [*Id.* (emphasis omitted)]. It asserts that the "[C]omplaint does not mention [Attorney] Mercurio" [*Id.*]. "Indeed," TABC claims, "there appears to be no mention of [him] in the record of this entire three-year case nor any indication as to why Plaintiffs should be entitled to his call log and employee file" [*Id.*]. With respect to Agent Grooms, TABC states that "the only claim remaining in this lawsuit pertains to the City's actions after May 2022" and that the "[C]omplaint does not implicate Agent Grooms during the relevant time period" [*Id.* at 7].

Plaintiffs respond that "[t]he retaliatory acts at issue are those that occurred *after* May 2022, including the TABC-led raid of [Plaintiff B&B] in July 2022 and [Plaintiff] Lawhorn's subsequent arrest" [Doc. 129 p. 4]. They state that their "theory is that the City, unable to act directly, used its influence to cause other agencies, namely the TABC, to carry out these retaliatory acts" [*Id.*]. Plaintiffs therefore assert that "communications between the City and the TABC are not tangential; they are the very evidence needed to prove the claim" [*Id.*]. With respect to Agent Grooms, Plaintiffs state, "While claims against Agent Grooms personally have been dismissed, his actions *after* May 2022, specifically his involvement in the July 2022 raid, remain a key component of the retaliation claim against the City" [*Id.*]. "Discovery of his communications, notes, and body camera footage from this period[,]" Plaintiffs argue "is essential to determine the extent of his

9

coordination with the City, who initiated the raid, and whether the justifications for it were pretextual" [*Id.* at 4–5]. With respect to Attorney Mercurio, Plaintiffs contend that he "was the TABC counsel involved in the legal proceedings and enforcement actions against Plaintiffs during the relevant post-May 2022 period" [*Id.* at 5]. According to Plaintiffs, "His communications and memoranda concerning Plaintiffs could reveal the City's influence on the TABC's legal strategy, expose the true motivations behind the enforcement actions, and are therefore directly relevant to proving retaliatory animus" [*Id.*]. Plaintiffs submit that any burden in producing these documents is outweighed by their need to discover the information [*Id.*].

TABC replies that "[t]his Court should not accept Plaintiffs' conclusory claim that 'speculation' of conspiracy is sufficient to subject a non-party government agency, TABC, to subpoena or discovery" [Doc. 133 p. 5 (citation omitted)]. It contends that "Plaintiffs have already tried and failed to sue TABC and Agent Grooms for conspiracy with other entities, including the City" [*Id.* (emphasis and footnote omitted)]. TABC states that "the subpoenas are not 'narrowly tailored to solicit only communications between TABC and the City . . ., as Plaintiffs claim" [*Id.* (citation omitted)]. Instead, TABC asserts that "the subpoenas demand materials from [Attorney] Mercurio's employee file, Agent Grooms' body camera footage, and any communications between TABC [Attorney] Mercurio ('or anyone acting on his behalf with the TABC') and anyone else that 'mention' Plaintiffs since May 2022" [*Id.* at 5–6 (emphasis and citations omitted)].

The Court has reviewed the subpoenas and finds that they seek irrelevant information from a non-party. Both subpoenas seek all documents and voicemail records about Plaintiffs from May 1, 2022, to the present [Doc. 121-1 p. 4; Doc. 121-2 p. 4]. Plaintiffs claim Agent Groom's information is relevant "to determine the extent of his coordination with the City" and that Attorney Mercurio's information "could reveal the City's influence on the TABC's legal strategy"

[Doc. 129 pp. 4–5]. But the subpoenas are not tethered to any communications to/from the City—instead, the subpoenas seek all voicemail recordings and documents, including faxes, letters, memorandum, and notes by Attorney Mercurio and Agent Groom, or anyone acting on their behalf, about Plaintiffs from May 1, 2022, to the present [Doc. 121-1 p. 4; Doc. 121-2 p. 4]. Plaintiffs point out that in July 2022, TABC led the raid of Plaintiff B&B [Doc. 129 p. 4]. But the subpoenas go beyond asking for information about that raid [*See* Doc. 121-1 p. 4; Doc. 121-2 p. 4]. In addition, the subpoenas seek all telephone logs for both individuals and are not limited to any specific numbers. With respect to Attorney Mercurio's documents, TABC claims that there is no "indication as to why Plaintiffs should be entitled to his . . . employee file" [Doc. 121 p. 7]. Indeed, it is unclear to the Court why Plaintiffs need information about his departure from the TABC [*see* Doc. 121-1 p. 4], and Plaintiffs do not provide any explanation.

After considering the relevant factors, the Court finds the subpoenas, as written, must be quashed.[3]

## III.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion to Quash [**Doc. 120**] and the subpoenas [**Docs. 121-1 and 121-2**] are hereby **QUASHED**. The Court therefore **DENIES AS MOOT** Plaintiffs' cross motion to compel [**Doc. 129**].

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge

---

[3]      In light of this finding, the Court need not address the parties' remaining arguments.

11