BILLIARDS AND BREWS, LLC, and )
RICHARD LAWHORN, )
)
    Plaintiffs, )
)
v. )    No. 3:23-CV-181-CLC-DCP
)
CITY OF KNOXVILLE, TENNESSEE, )
)
    Defendant. )

## MEMORANDUM AND ORDER

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Permit Deposition of Mayor Indya Kincannon and Memorandum of Law in Support ("Motion to Compel") [Doc. 113] and Defendant's Motion for Protective Order ("Motion for Protective Order") [Doc. 115]. The motions are ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a).

For the reasons stated below, the Court **GRANTS** the Motion to Compel [**Doc. 113**] and **DENIES** the Motion for Protective Order [**Doc. 115**].

## I.    BACKGROUND

Plaintiffs commenced this action on May 23, 2023, originally naming as Defendants: (1) the TABC; (2) the City of Knoxville, Tennessee ("City"); and (3) Sergeant John Coward ("Sergeant Coward"), an officer with the inspection's unit for the Knoxville Police Department ("KPD") [Doc. 1]. Later, Plaintiffs filed a First Amended Complaint [Doc. 40], naming

1

Defendants: (1) Steven Grooms ("Agent Grooms"), TABC's Assistant Special Agent in Charge, in his individual and official capacities; (2) the City; and (3) Sergeant Coward [*Id.* at 1–2].

Plaintiff Billiards and Brews, LLC ("Plaintiff B&B") "held a limited-service restaurant Liquor-by-the-Drink license allowing it to sell liquor, wine, and high-gravity beer at a restaurant or bar in a city or county which has authorized the sale of alcoholic beverages for on-premise consumption issued by the TABC" [*Id.* ¶ 11]. Plaintiff Richard Lawhorn "is the sole-owner of [Plaintiff] B&B" [*Id.* ¶ 2].

Plaintiffs allege that "[Plaintiff] B&B operated its establishment for many years well past 12 A.M." [*Id.* ¶ 13]. According to the Amended Complaint, "On May 22, 2020, Tennessee's Governor Bill Lee (hereinafter, "Governor Lee") issued Executive Order No. 38[,]" which generally gave Knox County the "authority to issue additional orders or measures related to the containment or management of the spread of COVID-19" [*Id.* ¶ 18]. Following this Executive Order, Plaintiffs allege that the City, the Knox County Health Board ("KCHB"), and Mayor Kincannon began issuing regulations and ordinances regulating the hours of certain businesses, including restaurants and bars [*Id.* ¶¶ 20–41]. Plaintiffs generally allege that such actions were done without authority [*Id.*]. Specifically, with respect to Mayor Kincannon, Plaintiffs claim that she amended Chapter 4, Article II, Section 4-32(b) ("Section 4-32(b)") of the Code of City Ordinances without authority [*Id.* ¶ 36]. It too pertained to curfews [*Id.*].

Plaintiffs claim that "Plaintiff Lawhorn has been a vociferous opponent of Mayor Kincannon in the Knoxville media/press about the unlawful amended [Section] 4-32[](b) being unconstitutional and in fighting for his constitutional rights and that of others he refused to close his business at 10 P.M." [*Id.* ¶ 47]. "[A]s a result of [Defendant] Lawhorn exercising [F]irst [A]mendment rights, Mayor Kincannon retaliated and entered into a conspiracy with the other

2

Defendants . . ., as well as defendants/conspirators not yet known[,] to shut down [Plaintiff] B&B" [*Id.*]. They allege that "Mayor Kincannon told [Sergeant] Coward that if [Plaintiff] Lawhorn did not comply with the unlawful curfew[,] she would shut down [Plaintiff] B&B" [*Id.* ¶ 50]. Plaintiffs claim that "[Plaintiff] B&B was cited 18 times by KPD for violations of the Knoxville's 'Covid Curfew'" [*Id.* ¶ 52]. Every violation related to Section 4-32(b) for "being 'open for business past the curfew'" [*Id.* ¶ 53]. Sergeant Coward issued most of the citations, and he "communicated the same with . . . Agent Grooms[,] who then executed a summary suspension of B&B's liquor license" [*Id.* ¶ 54]. According to Plaintiffs, "Mayor Kincannon and Attorney Alyson Dyer conspired with [Sergeant] Coward, as well as other defendants/conspirators not yet known, to cite [Plaintiff] B&B for violations of the amendment 4-32(b) in order to take [Plaintiff] B&B's beer permit and liquor license, thereby constituting an unconstitutional taking of [its] personal property" [*Id.* ¶ 55]. "Prior to [Plaintiff] B&B having a chance to be heard and defend itself against these unconstitutional citations," Plaintiffs allege that "[Sergeant] Coward was conspiring by email transmission, and perhaps by other means of communication, with Agent Grooms of the TABC to have B&B's liquor license revoked – without a hearing on same" [*Id.* ¶ 56]. Specifically, Sergeant Coward emailed Agent Grooms: "Attorney showed [h]is cards in his first hand. We'll be ready for him." [*Id.* ¶ 83]. On February 9, 2021, Sergeant Coward emailed Agent Grooms: "Hopefully this will help us revoke his beer permit" [*Id.* ¶ 84].

Plaintiffs claim that "[o]n January 22, 2021, the TABC revoked B&B liquor license without a hearing and without Agent Grooms independently investigating the allegations against [Plaintiff] B&B" [*Id.* ¶ 57]. A few days later, on January 28, 2021, Plaintiffs state that "Agent Grooms and [Sergeant] Coward unlawfully entered [Plaintiff] B&B's premises and noted that there was no alcohol being sold or consumed yet gave a citation to [it] for being open past the 'COVID

CURFEW'" [*Id.* ¶ 58]. "The Knoxville City Beer Board requested a 75-day suspension of [Plaintiff] B&B's beer permit[,]" and on February 10, 2021, an administrative law judge "revoked [Plaintiff] B&B's beer permit" [*Id.* ¶¶ 62, 65]. On May 7, 2021, City Court Judge Rosson affirmed [*Id.* ¶ 68].

Several months later, on August 13, 2021, Sergeant Coward testified at a TABC "hearing to revoke [Plaintiff] B&B['s] liquor license as a result of the Knoxville City Law Department's unlawful Covid shutdown flyers" [*Id.* ¶ 73]. Plaintiffs allege that "[t]he City of Knoxville Beer Board revoked B&B's beer permit" [*Id.* ¶ 75]. "In January 2022, Judge Waters[] issued an order to revoke [Plaintiff] B&B's liquor-by-the-drink license" [*Id.* ¶ 107].

Later, "[i]n July 2022, a small paramilitary unit swarmed down on [Plaintiff] B&B purporting to have a search warrant" [*Id.* ¶ 92]. The TABC provided Plaintiffs "an incomplete copy" of the search warrant [*Id.*]. Plaintiffs assert that "the TABC did not have a valid search warrant" [*Id.* ¶ 94].[1] This raid caused Plaintiff B&B to shut down [*Id.* ¶ 108].

In May 2023, Plaintiff Lawhorn ran for Knoxville City Mayor [*Id.* ¶ 110]. Defendants "issued a warrant for his arrest silencing his campaign" [*Id.*]. A journalist contacted Plaintiff Lawhorn prior to his arrest [*Id.* ¶ 111]. Plaintiffs question how the media knew about the arrest prior to Plaintiff Lawhorn or his attorney knowing about it [*Id.*].

Based on the above, Plaintiffs alleged: (1) a claim under 42 U.S.C. § 1983 for violation of First Amendment rights; (2) violation of the Equal Protection Clause; (3) loss of personal property; and (4) a claim under 42 U.S.C. § 1985 for conspiracy to violate Plaintiffs' civil rights [*Id.* ¶¶ 102–128].

---

[1]     Plaintiffs also state that a raid occurred on July 21, 2020 [Doc. 40 ¶ 108]. This appears to be the same raid referenced above and the date is merely a typographical error [*See* 54 p. 8 n.3].

Sergeant Coward moved to dismiss the Amended Complaint [Doc. 41], and on September 11, 2024, United States District Judge Curtis Collier dismissed all claims against Sergeant Coward except the First Amendment retaliation claim [*See* Docs. 54 pp. 23 & 55]. Later, on October 15, 2024, Judge Collier dismissed Agent Grooms for lack of service [Doc. 58]. Following this Order, Sergeant Coward filed a motion for summary judgment arguing that the allegations against him were time barred [Doc. 61]. Plaintiffs responded that they did not oppose the motion, so therefore, Judge Collier granted it and dismissed all claims against Sergeant Coward [Doc. 97].

On December 6, 2024, the City filed a motion for summary judgment [Doc. 64]. On September 16, 2025, Judge Collier granted in part and denied in part that motion [Doc. 101]. He dismissed all claims except Plaintiffs' First Amendment retaliation that occurred after May 23, 2022 [*Id.* at 20]. In recounting the facts relevant to this claim, Judge Collier noted:

> Plaintiffs allege facts that the City deprived them of their right to not be retaliated against for exercise of free speech under the First Amendment. According to the first amended complaint, "a small paramilitary unit swarmed down on B&B purporting to have a search warrant." Plaintiffs allege they requested a copy of the search warrant from TABC, but did not receive a complete copy. TABC removed liquor belonging to Plaintiffs. "Upon information and belief," the search warrant was invalid, and the raid was undertaken by "the conspirators" to "take down the Plaintiff once and for all with the July 2022 raid, in part to silence him." Plaintiffs further allege [Plaintiff] Lawhorn entered the mayoral race as a candidate. They assert the City, in concert with other unknown coconspirators issued a warrant for Plaintiff Lawhorn's arrest, which "silenced his campaign."

[*Id.* at 12–13 (citation modified)].

On February 24, 2026, Plaintiffs filed the Motion to Permit Deposition of Mayor Indya Kincannon and Memorandum of Law in Support [Doc. 113]. Citing to Rules 26, 30, and 37 of the Federal Rules of Civil Procedure, Plaintiffs request "an [o]rder permitting [them] to take the

deposition of City of Knoxville Mayor Indya Kincannon under reasonable, Court-imposed conditions" [*Id.* at 1]. They represent that defense counsel has refused to allow Mayor Indya Kincannon ("Mayor" or "Mayor Kincannon") to be deposed [*Id.*]. Plaintiffs argue that her deposition is relevant and proportional to the needs of the case [*Id.* at 5–6]. Further, they submit that "any burden, inconvenience, or concern attendant to deposing a high-ranking official can be addressed through targeted, [c]ourt-ordered limitations rather than an outright bar" [*Id.* at 2; *see also id.* at 6–7]. Plaintiffs contend that Defendant must demonstrate specific harm to prevent the deposition and that tailored protective conditions are more appropriate than a complete bar [*Id.* at 7–8].

Following Plaintiffs' motion, Defendant filed the Motion for Protective Order [Doc. 115]. Citing to Rule 26(c)(1), Defendant contends that "[t]he only remaining claim in this lawsuit involves a search of [Plaintiff B&B] on July 19, 2022, which was conducted by agents of the [TABC] where a police officer from the [KPD] was present" [*Id.* at 15]. According to Defendant, there are five primary reasons to enter a protective order prohibiting her deposition [*See* Doc. 117]. First, it contends that "Mayor Kincannon does not possess personal knowledge relevant to the claims being litigated or the facts related to the case" [*Id.* at 3 (citation omitted)]. Second, Defendant asserts that "Plaintiffs cannot demonstrate that the deposition of Mayor Kincannon is necessary to obtain information unavailable through less burdensome means, and the contemplated deposition would impose undue burden and expense disproportionate to any potential benefit" [*Id.* at 4]. Third, Defendant submits that "the deposition of the Mayor would impose substantial burden" [*Id.*]. Fourth, Defendant represents that Plaintiffs' request for her "deposition is not grounded in legitimate discovery needs but is a means of harassment" [*Id.* at 5]. Fifth, Defendant

6

claims that "Plaintiffs will suffer no prejudice from entry of a protective order" [*Id.*]. In support of its position, Defendant relies on the Declaration of Mayor Indya Kincannon [Doc. 116].

Defendant also filed its response in opposition to Plaintiffs' Motion to Compel [Doc. 118]. It incorporates and relies on its filing made with its Motion for Protective Order [*Id.* at 1]. Defendant also argues that since the Court entered its previous order on summary judgment, "[P]laintiffs have not taken a single deposition" [*Id.* at 2]. It claims that Plaintiffs have no "evidence to connect Mayor Indya Kincannon to these events" [*Id.*]. In support of their request, Defendant states that Plaintiffs rely on their pleadings, but "these allegations are not based upon facts but were pl[eaded] 'on information and belief'" [*Id.* at 2–3 (citations omitted)]. Defendant argues that "the adverse actions – seizing liquor from the bar and indicting [Plaintiffs] -- were taken by agents of TABC pursuant to a search warrant obtained by TABC from a state-court judge" [*Id.* at 3]. According to Defendant, "This is precisely the type of "fishing expedition" from a high-ranking public official which the Sixth Circuit has disallowed" [*Id.* (citations omitted)].

Plaintiffs filed a response in opposition to Defendant's Motion for Protective Order [Doc. 123]. They deny that their request to depose Mayor Kincannon is a fishing expedition [*Id.* at 1]. Plaintiffs argue Defendant has failed to show good cause for a protective order [*Id.* at 2]. Plaintiffs claim that they have evidence that the retaliation was attributed to the Mayor and that she made public statements about Plaintiff Lawhorn [*Id.* at 3]. In addition, Plaintiffs state that the City was involved in the raid [*Id.* at 3–4]. Further, Plaintiffs claim that Plaintiff Lawhorn was arrested during his campaign against Mayor Kincannon [*Id.* at 4]. They contend that Mayor Kincannon's declaration is not a substitute for discovery [*Id.*]. Plaintiffs assert that Defendant relies on inapplicable authorities for its request a [*Id.* at 4–5]. In addition, they submit that while "[t]he City complains that Plaintiffs have not yet deposed other witnesses[,]" this does not justify prohibiting

7

the deposition [*Id.* at 5]. And Plaintiffs contend that they "have agreed to sequence the Mayor's deposition after deposing Officer Taylor and the relevant TABC agents" [*Id.* (emphasis omitted)]. They maintain a limited deposition is appropriate [*Id.* at 6–7].[2]

Defendant filed a reply in support of its Motion for Protective Order [Doc. 128]. It contends that "[Plaintiffs'] lawyer has now filed a memorandum that contains mischaracterizations and misrepresentations about the evidence in the record" [*Id.* at 1]. Defendant submits that Plaintiffs contend that there are four evidentiary bases to proceed with Mayor Kincannon's deposition, but "[w]hen the characterizations are compared to the actual facts in the record, it is evident that Plaintiffs have no legitimate basis for taking . . . the Mayor Kincannon's deposition" [*Id.* at 2; *see also id.* at 3–6].

## II.     ANALYSIS

Plaintiffs want the Court to compel Mayor Kincannon's deposition, and Defendant seeks to prevent it. Under Rule 37(a), a party may move to compel discovery of relevant information. *Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 1155046, at *2 (E.D. Tenn. Mar. 27, 2017) (citing Fed. R. Civ. P. 37(a)). The party moving to compel "bears the initial burden of proving that the information sought is relevant[.]" *Id*. (quoting *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). Once the party shows relevancy, "the burden shifts to the party resisting discovery to demonstrate 'why the request is unduly burdensome or otherwise not discoverable.'" *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-CV-2235, 2016 WL

---

[2]     Plaintiffs also filed a response and memorandum to Defendant City of Knoxville's Motion for Protective Order [Doc. 124]. It is not clear why Plaintiffs filed it. *See* E.D. L.R. Tenn. 7.1(a) (setting forth the briefing schedule). While the Court has reviewed this document, it has not summarized it given that it is largely duplicative of the former response [*See* Doc. 123]. Moving forward, however, the Court may strike filings that do not comport with the Local Rules.

5869580, at *4 (W.D. Tenn. Oct. 5, 2016) (quoting *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 310 (W.D. Tenn. 2008)).

Rule 26(c) governs protective orders, which provides, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)). The party requesting the protective order has the burden of establishing good cause. *Id.*; *see also Popeck v. Rawlings Co. LLC*, No. 3:16-CV-138, 2017 WL 11725427, at *6 (W.D. Ky. Apr. 6, 2017) ("Because entry of a protective order is contrary to the basic policy in favor of broad discovery, the party that seeks a protective order has the burden to make a strong showing why discovery should be denied." (citations omitted)). "[A] showing of irrelevancy of proposed discovery can satisfy the good cause requirement of Rule 26(c)." *Large on behalf of Large v. Blazer*, No. 3:20-CV-1012, 2022 WL 99986, at *2 (M.D. Tenn. Jan. 10, 2022).

"Application of Rule 26(c) assumes that a party has the right to issue a discovery request in the first place." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 550 (E.D. Tenn. 2013). "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Allen v. Cam's Transp. Co.*, No. 3:22-CV-403, 2024 WL 3093480, at *4 (E.D. Tenn. June 20, 2024) (quoting *Fjellman v. Forest Hill Co-op.*, No. CIV.A. 06-CV-14470, 2007 WL 1806173, at *2 (E.D. Mich. June 21, 2007)); *see also Dang ex rel. Dang v. Eslinger*, No. 6:14-CV-37, 2014 WL 3611324, at *2 (M.D.

9

Fla. July 22, 2014) ("Protective orders prohibiting depositions are rarely granted.") (quoting *Bucher v. Richardson Hospital Authority*, 160 F.R.D. 88, 92 (N.D. Tex. 1994)). Even so, the United States Court of Appeals for the Sixth Circuit has stated that "even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting Wright & Miller, Fed. P. & Pro. § 2036 (3d ed. 2012)).[3]

At the outset, the Court notes that Judge Collier stated, "The Court must allow Plaintiffs a full opportunity to conduct discovery on the merits of the First Amendment retaliation claims that occurred after May 23, 2022" [Doc. 101 p. 19]. Plaintiffs assert that they have "non-speculative evidence suggesting the Mayor's knowledge and motive are central to their remaining claim" [Doc. 123 p. 1]. They list the evidence as follows: "(1) testimony that a City police sergeant explicitly threatened Plaintiff Lawhorn with retaliation from the Mayor; (2) public statements attributed to the Mayor demonstrating animus toward Plaintiffs; (3) documentary evidence showing the City's active role in orchestrating the raid; and (4) the presence of a City police officer during the raid itself" [*Id.*]. In addition, they claim that Plaintiff Lawhorn was arrested during his mayoral campaign against Mayor Kincannon [*Id.* at 4]. Defendant responds: (1) Plaintiff Lawhorn submitted an errata sheet changing his testimony that the alleged threat was not made by Sergeant

---

[3]    *See also Brian J. Lyngaas, D.D.S., P.L.L.C. v. Solstice Benefits, Inc.*, No. 22-10830, 2023 WL 6302998, at *3 (E.D. Mich. Sept. 27, 2023) ("*Serrano* did not hold that a corporate officer may be deposed at any time no matter if the information may be obtained through other sources or is unduly burdensome." (citing *Davis v. SIG Sauer, Inc.*, No. 322CV00010, 2023 WL 3292869, at *2 (E.D. Ky. May 5, 2023) ("However, [the *Serrano* holding] doesn't mean all high-level executives must sit for discovery depositions at the whim of counsel.")); *Duncan v. Husted*, No. 2:13-CV-1157, 2015 WL 631103, at *3 (S.D. Ohio Feb. 12, 2015) (explaining that under *Serrano*, "[c]ourts [may] not assume, without being provided with some evidence, that a particular deposition would be unduly burdensome or harassing").

Coward but an unknown officer, and even if an unknown officer did make a threat, there is no evidence that the Mayor made it [Doc. 128 p. 3]; (2) the Mayor's public statements were not close in time to the raid [*id.* at 4]; (3) the City Attorney, Alyson Dyer, had nothing to do with the raid; and (4) Plaintiff testified that he was not arrested as he originally claimed [*Id.* at 5–6]. Defendant also relies on the Mayor's Declaration, which denies: (1) directing the Inspections Division from taking any enforcement action, (2) knowledge about the raid, and (3) "personal knowledge of the facts and claims alleged in this case" [Doc. 116 ¶¶ 5, 7, and 8].

After reviewing the parties' positions, the Court notes that Plaintiffs have presented some evidence, by way of Plaintiff Lawhorn's deposition, that in December 2020, Sergeant Coward told him that if he "didn't start following Mayor Kincannon['s] 432(b)[,] she would put [him] out of business" [Doc. 124-1 p. 2]. Plaintiff Lawhorn further testified that an officer—albeit an unknown one—told him in June 2022, that if he "didn't quit stepping on the [M]ayor's toes, she's going to put [him] out of business" [Doc. 123-1 p. 1; Doc. 124-1 p. 2]. He testified, "About 45 days later[,] August 3, 2026, [he] was out of business" [Doc. 124-1 p. 2]. And public statements about Plaintiff B&B violating ordinances were attributed to the Mayor [Doc. 128-2]. Plaintiffs have therefore shown some evidence that may implicate the Mayor. Given that relevancy is a low threshold, the Court declines to prohibit the deposition from proceeding. *See Amos v. Lampo Grp., LLC*, No. 3:21-CV-00923, 2023 WL 375938, at *3 (M.D. Tenn. Jan. 24, 2023) ("[T]he burden of relevance is intentionally not a high one[.]"); *Burrell v. Duhon*, No. 518CV00141, 2019 WL 5260481, at *2 (W.D. Ky. Oct. 17, 2019) ("The spirit and purpose of the Federal Rules of Civil Procedure demonstrate that the relevance threshold is a relatively low one." (citation omitted)).[4]

---

[4]     *Cf. Graves v. Bowles*, 419 F. App'x 640, 646 (6th Cir. 2011) (affirming the court's protective order because the plaintiff "could not refute [the mayor's] lack of relevant knowledge

Further, Defendant has not established any of the harms identified in Rule 26(c). It claims that the deposition "would impose undue burden and expense" [Doc. 115 p. 2]. It relies on Mayor Kincannon's declaration, which states, "In my position as Mayor, I have many important responsibilities and pressing issues. Taking time for depositions in cases where I have no personal knowledge would impede my ability to direct the operations of City government efficiently and to perform my responsibilities as Mayor effectively" [Doc. 116 ¶ 3]. Later, she claims, "Taking time to prepare for and give a deposition would interfere with my responsibilities as Mayor of Knoxville. Further, given my lack of knowledge about this case, there are certainly other persons who are better resources for information than I am" [*Id.* ¶ 8]. "Obligations, time constraints, and official responsibilities[;]" however, "are all part of the job of any busy official, . . . and cannot be used as a blanket pass against being deposed in any and all cases involving the duties of the office." *Duncan v. Husted*, No. 2:13-CV-1157, 2015 WL 631103, at *3 (S.D. Ohio Feb. 12, 2015); *see also Nix*, 11 F. App'x at 500 (moving party must articulate a "clearly defined and serious injury" (quoting *Avirgan*, 118 F.R.D. at 254)). Moreover, in light of her claim that she does not have knowledge, her "deposition is likely to be very short." *Summer v. Detroit Pub. Schs. Cmty. Dist.*, No. CV 21-12936, 2022 WL 22257187, at *3 (E.D. Mich. June 30, 2022).[5]

---

regarding the case, and even today, he has failed to explain to us precisely what facts [the] [m]ayor . . . may possibly reveal"); *Watson v. City of Cleveland*, 202 F. App'x 844, 852 (6th Cir. 2006) (upholding protective order when the defendant's case focused on actions undertaken by various members of the mayor's administration and involved the mayor only to the extent that the mayor supervised city employees and had very little information related to plaintiff's claims and none that was unavailable from another source); *Elvis Presley Enters., Inc. v. City of Memphis*, No. 2:18-CV-02718, 2020 WL 4015476, at *12 (W.D. Tenn. July 16, 2020) (affirming the magistrate judge's protective order prohibiting the mayor's deposition because the plaintiff did not submit evidence that the "[mayor] directed anyone to take retaliatory acts against [it]").

[5]    Defendant relies on *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889 (6th Cir. 1991) in support of its position. In that case, the Sixth Circuit affirmed the court's order denying

The Court acknowledges, however, that Plaintiffs have not presented much evidence that the Mayor was involved in the underlying allegations. For example, they accuse Alyson Dyer of being involved in the raid, but that does not necessarily implicate the Mayor. Plaintiffs also reference Plaintiff Lawhorn's arrest, but during his deposition, Plaintiff claims he was booked rather than arrested. Plaintiff Lawhorn does not explain why he was booked, nor is there any evidence that the Mayor was involved in his booking. He claims that there was a City police officer present at the raid, but again, that does not necessarily implicate the Mayor. Plaintiffs have offered to set parameters on this deposition [*see* Doc. 124 pp. 8–9], which the Court finds appropriate. But the Court will further limit this deposition to **90 minutes**. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (stating that the court may on its own limit the extent of discovery if it determines that it "can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) (finding the magistrate judge's order limiting corporate officers' depositions in duration and scope to be "a reasonable way to balance [the plaintiff's] right to discovery with the need to prevent 'fishing expeditions'").[6]

## III.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' Motion to Permit Deposition of Mayor Indya Kincannon and Memorandum of Law in Support [**Doc. 113**] and

---

the defendant's request to depose Priscilla Presley. *Id.* at 894. The Court reasoned that the defendant claimed that she "may have had knowledge about whether the Presley Estate and then [the plaintiff] allowed others, including [the defendant], to use the Presley rights without interference." *Id.* "Ms. Presley submitted an affidavit stating that she had no knowledge of [the defendant's] activity prior to the filing of the action." *Id.* The Court found that only the defendant's actions were relevant and therefore the deposition was not warranted. *Id.* Here, Plaintiffs have presented some evidence that relates to the Mayor.

[6]      To the extent Plaintiffs need more time to depose the Mayor, the parties **SHALL** meet and confer, and if they reach an impasse, Plaintiffs may file an appropriate motion.

**DENIES** Defendant's Motion for Protective Order [**Doc. 115**]. The parties **SHALL** abide by the parameters set forth above.

      **IT IS SO ORDERED.**

      ENTER:

Debra C. Poplin
United States Magistrate Judge

14